AUGUST DIEHL, by HENRY DIEHL, His Next Friend, v. A. P. GREEN FIRE BRICK COMPANY, Appellant.

Division Two, July 14, 1923.

1. **NEGLIGENCE:** Master and Servant: Relationship Established by Substantial Circumstantial Proof: Independent Contractor. A lease contract gave to defendant the sole right to mine and remove fire clay from the premises near which the dynamite cap that exploded and injured plaintiff was procured; the contract required defendant to conduct mining operations on the premises in a

299 Mo.—41.

thorough, safe, careful and workmanlike manner, and to pay a royalty of seven and one-half cents per ton for all fire clay removed; defendant negotiated for electric power used at the mine, and for the installation of a railroad switch and spur to the mine; furnished supplies and materials to the man who did the actual mining, who submitted to defendant weekly reports as a basis for checks drawn by defendant to meet payrolls, including the salary of such other, and all supplies purchased by him were charged to defendant. *Held*, that these facts constitute substantial circumstantial proof of the existence of the relationship of master and servant between defendant and such other, and not merely proof of facts from which such relationship may be presumed or inferred in the absence of proof to the contrary, and furnish a sufficient basis for a finding by the jury that such other was not an independent contractor.

2. ———: Casting Aside Dynamite Caps: Injury to Children: Proximate Cause: Concurring Acts. Dynamite caps with fuses attached were used at the mine, and one of the men working under the man in charge of the work, in pursuance to instructions given to him, had twisted the fuses of four unexploded caps together and thrown them to a point across the track of a near-by railroad into some grass and weeds; two or three days later, plaintiff, a seven-year-old boy, and his brother, aged eleven, came to the mine to bring their father his breakfast, and their usual route passed within fifty feet at furthest of the place to which the caps had been thrown; they obtained the caps, took them home, showed them to their mother, and she probed into one of them with a stick and handed it to the older boy, who gave it to the plaintiff, and he picked up a small stick from the fire and inserted it in the cap and that caused it to explode. Defendant's servant in charge of the mine knew that these and other children had been and were likely to be about the mine. *Held*, that dynamite caps are extremely dangerous, are easily exploded, and are attractive to children, and it was for the jury to say whether a reasonably prudent and careful man would have thrown them to a place where they might be found and cause injury, and the facts were sufficient to establish actionable negligence. *Held,* also, that the act of the mother in examining the caps and handing them back to the children was merely a concurring act of negligence, and did not break the causal connection between defendant's negligence and the injury to plaintiff, and especially should such be the ruling where the mother testified that she was ignorant of the dangerous character of the cap.

3. ———: Instruction: Departure: Intentional and Wilful Injury. An instruction telling the jury that if defendant "purposely placed

unexploded dynamite caps," etc., is not a departure from a peti-
tion charging only negligence; the word "purposely" is not
used in the sense of wilfully or wantonly, but the word "negligent-
ly" would have been better.

4. ———: ———: Unexploded Dynamite Caps: Assumption of Danger.
An instruction which assumes that unexploded dynamite caps
containing a live and highly explosive element are dangerous is
not error, where no issue is made of their dangerous character,
although it would be better practice to require the jury to find
that they were dangerous.

5. ———: Active Agent: Independent Contractor: Burden of Proof.
The man in charge of the mine told an employee working under
him to throw away four unexploded dynamite caps, and the em-
ployee did so, and plaintiff was injured by the explosion of one
of said caps. The petition alleged that the injury was caused
by the negligent act of said servant, and to this allegation defend-
ant pleaded that the man in charge of the mine was an independent
contractor and not defendant's servant, and the issue whether he
was defendant's servant or an independent contractor was hotly
contested throughout the trial. Held, that the giving of an
instruction telling the jury that it devolved on defendant to show
by the preponderance of the evidence that the man in charge of
the mine was not defendant's servant, but an independent con-
tractor, was error. Notwithstanding defendant had pleaded that
he was an independent contractor, the burden remained on plain-
tiff throughout the whole case to show that the employee who
threw away the unexploded cap was the servant of defendant.

6. ———: Uncontradicted Evidence: Instruction to Find for Defend-
ant. Where there is substantial evidence that defendant's em-
ployee, under direction of the foreman, threw unexploded dyna-
mite caps onto the near-by railroad right-of-way, and that plain-
tiff, a seven-year-old boy, found them there, the jury are not bound
to believe defendant's evidence that the identical caps were found
there after the plaintiff's injury, even though such evidence be
uncontradicted; and therefore an instruction telling the jury
that there is no evidence that the caps which exploded and in-
jured plaintiff were thrown upon the right-of-way by defendant's
employee or other servant, should be refused.

7. ———: Injury to Child: Imputing to Him Negligence of Mother:
Causal Connection: Instruction. The negligence of a mother cannot
be imputed to her seven-year-old boy; and where two children,
one eleven and the other seven years old, found dynamite caps
in the grass on a railroad right-of-way where they had been
thrown by defendant's servant, took them home, showed them to

their mother, she examined them, handed them back to the eleven-year-old child, and he gave one of them to the seven-year-old boy, who picked up a small stick from the fire, inserted it in the cap and immediately it exploded, the act of the mother, even if negligent, was only a negligent act concurring with the negligent act of defendant, and was not sufficient to break the causal connection between defendant's negligent act and the child's injury, and instructions which seek to use the negligent act of the mother to excuse the negligence of defendant should be refused.

8. **INSTRUCTION: Reiteration.** When the court has fully instructed on any issue in the case it is not error to refuse other instructions which simply ring the changes on the same proposition.

9. ————: **Proximate Cause: Definition.** An instruction telling the jury that "by the term 'proximate cause' as used in these instructions is not meant the cause nearest in time or physical sequence, but it is that cause without which the injury would not have happened, and from which the injury, or a like injury, might reasonably have been anticipated," is not error. Nor is it rendered bad by the fact that it did not tell the jury the effect of an intervening act of negligence where the evidence fails to show the intervention of such an independent act of negligence as would relieve defendant of liability.

10. **EVIDENCE: Hearsay: Name of Mining Shaft.** Testimony that the mining shaft was known by defendant's name is hearsay, and should not be admitted where the hotly-contested issue is whether the mine at the time of the injury was being operated by defendant or an independent contractor.

11. ————: **Cause of Injury.** A physician should not be permitted to testify that the condition of plaintiff's eye was caused by his injury. The proper course is to show by him that the condition could or might have been caused by the injury.

12. ————: **Denial of Statement: Impeachment: Rehabilitation.** Where plaintiff's father on cross-examination denied that he had at a certain time and place told a certain person that plaintiff and his brother had found the dynamite caps on an old coal bank, and said person had testified by way of impeachment that the father had so stated to him, it was not proper to permit the father to testify in rebuttal that he told said impeaching witness that the boys found the caps at defendant's mine.

Appeal from Callaway Circuit Court.—*Hon. David H. Harris,* Judge.

REVERSED AND REMANDED.

*R. D. Rodgers* and *P. H. Cullen* for appellant.

(1) The court erred in not directing a verdict for defendant. State ex rel. Lusk v. Ellison, 196 S. W. 1088; Washburn v. Laclede Gas Light Co., 223 S. W. 725. (2) The court erred in allowing plaintiff to recover on a cause of action not embodied in his petition. Beck v. Ferrara, 19 Mo. 30; Link v. Vaughn, 17 Mo. 585; Duncan v. Fisher, 18 Mo. 403; Robinson v. Rice, 20 Mo. 229; Huston v. Forsythe Scale Works, 56 Mo. 416; Fyerman v. Cemetery Assn., 61 Mo. 489; Ensworthy v. Barton, 60 Mo. 511; Harris v. Railroad, 37 Mo. 307; McManamee v. Railroad, 135 Mo. 440; Waldhier v. Railroad, 71 Mo. 514; Clements v. Yates, 69 Mo. 623; Hite v. Street Railway, 130 Mo. 132. (3) Plaintiff's instruction numbered 1 submits the case to the jury on the theory of intentional injury and not negligence, and is therefore erroneous. Reed v. State, 106 N. W. (Neb.) 649; Ramey v. Met. Ry. Co., 157 Mo. 447; Holiverson v. Railroad, 157 Mo. 216; Drolshagen v. Railroad, 186 Mo. 258. (4) Instruction numbered 4 was erroneous, because it assumed disputed facts, and is not based on the evidence. Weddle v. Water Co., 230 S. W. 386. (5) The court erred in giving the instruction placing the burden upon defendant to prove that the servant causing the injury was not in the employ of defendant. Bragg v. Railway Co., 192 Mo. 351; Griffith v. Con. Gas Co., 235 S. W. 83; Kamnishi v. Iron Works, 167 Mo. 470; Brunswick v. Ins. Co., 278 Mo. 154; 2 Encyc. Evi. 808; Downs v. Horton, 230 S. W. 103. (6) The court erred in instructing the jury that the burden was upon the defendant to prove that Reed was an independent contractor. Cases supra. (7) The court erred in permitting the expert medical witness to invade the province of the jury and testify to the ultimate facts which the jury were sworn to decide. Glasgow v. Railroad, 191 Mo. 365; Caslanie v. Railroad, 249 Mo. 192; Jackman v. Railroad, 187 S. W. 786. (8) The court erred

in permitting the plaintiff to prove that the defendant owned or operated the shaft in question by having witness testify to the name by which the shaft was generally known and its repute and the understanding of third parties. (9) The court erred in refusing the instructions offered by defendant advising the jury that the furnishing of money by the defendant to Reed, did not destroy Reed's relation to defendant as an independent contractor. (10) The court erred in refusing plaintiff's instructions as to intervening cause and hypothecating the theory that plaintiff's mother gave the cap to the boy and by example and suggestion led him to apply fire to it and explode it. (11) The court erred in advising the jury that the act nearest in time could not be a proximate cause and in failing to fully define proximate cause after using said words in instruction numbered 1.

*Baker & Baker* for respondent.

(1) The court did not err in submitting the case to the jury. (a) Independent contractor or employee. Knoche v. Pratt, 194 Mo. App. 300; MacGrath v. St. Louis, 115 Mo. 191; Kipp v. Oyster, 133 Mo. App. 711; Porter v. Wilkins Estate Co., 201 Mo. App. 27; Flori v. Dolph, 192 S. W. 949; Cochran v. Rice, 26 S. D. 393; Barclay v. Puget Sound Lumber Co., 48 Wash. 241. (b) Negligence. City of Lubbock v. Bagwell, 206 S. W. (Tex.) 371; Eckart v. Kiel, 123 Minn. 114; Wells v. Gallagher, 144 Ala. 363; Clark v. E. J. Dupont, 94 Kan. 268; Cinn. Ry. Co. v. Padgett, 158 Ky. 301; Miller v. Chandler, 168 Ky. 606; Barnett v. Cliffride Mills, 167 N. C. 576; Forester v. Rogers, 247 Pa. 54; Crab v. Wilkins, 59 Wash. 302; Mathis v. Granger Brick & Tile Co., 85 Wash. 639; Sandeen v. Tschiver, 205 Fed. 252. (c) Intervening or proximate cause. Loveless v. Cunard Mining Co., 201 S. W. 375; Washburn v. Laclede Gas & Light Co., 202 Mo. App. 102; Powell v. Walter, 195 Mo. App. 150; Fleddermann v. Transit Co., 134 Mo. App. 199; Krehmeyer v. Transit Co., 220 Mo. 639. (2) Plain-

tiff did not recover upon an action not embodied in his petition, neither did plaintiff's instruction number one submit the case to the jury on the theory of intentional injury. (3) Plaintiff's instruction numbered four on the subject of independent contractor is a correct declaration of the law. Knoche v. Pratt, 194 Mo. App. 300. (4) If the court had given an instruction placing the burden upon the defendant to prove that the servant causing the injury was not in the employ of the defendant, it would have been error, but respondent contends that no such instruction was given. And the construction and interpretation put upon the instruction on this point by the appellant in his argument is not the correct interpretation or construction. (5) The court correctly instructed the jury that the burden was upon the defendant to prove that Reed was an independent contractor. (6) Respondent contends that under the peculiar facts of this case there was no prejudicial error committed by the court in admission of the testimony of Dr. McCubbin. There was no contention in the trial court as to either the cause or' the extent of plaintiff's injury, and no contention on the part of the appellant that plaintiff's condition at the time of the trial was caused by any agency other than the injury complained of. And, even though there might have been error in the admission of the testimony complained of, this cause should not be reversed on that ground. Errors not affecting substantial rights will not authorize a reversal. Secs. 1276, 1513, R. S. 1919; White v. Cordwell Stone Co., 213 S. W. 518; Cross v. Gould, 131 Mo. App. 585; Freeland v. Williamson, 220 Mo. 217; Mann v. Doerr, 222 Mo. 1, 15; Berry v. Railway, 214 Mo. 593. (7) There was no error in proving by witness William Custard the name by which plant was known. 29 Cyc. 971; Meinert v. Smow, 27 Pac. 677; Hinchcliffe v. Koontz, 121 Ind. 422. (8) The instruction given on part of the plaintiff defining proximate cause was correct. Cases under "(c)" supra. (9) Errors not affecting substantial rights will not authorize a reversal. Secs. 1276, 1513, R. S. 1919; Cass v. Insurance Co., 188 Mo. 1; Hamilton v. Crow, 175 Mo. 634.

DAVID E. BLAIR, J.—The action was for damages for personal injuries. Jury trial resulted in a verdict for plaintiff for $10,000, and defendant has appealed from the judgment rendered thereon.

The petition alleged that on and prior to May 28, 1920, the defendant was engaged in the business of sinking a shaft and mining clay at said shaft and that, in sinking and mining said shaft, defendant used dynamite and caps; that plaintiff and his brother had been in the habit of carrying to said shaft the meals for their father, who worked at said shaft, which custom was well known to defendant, its agents and servants, and that defendant and its servants knew or could have known that, in bringing such meals to their father, plaintiff and his brother traveled along and across the right-of-way of the Chicago & Alton Railway Company adjacent to the shaft; that on the aforesaid day, or a day or two previous thereto, defendant or its agents, servants and employees carelessly and negligently threw dynamite caps, a high and dangerous explosive, along such right-of-way and at a point upon said right-of-way where the defendant, its agents and servants or employees knew or could have known that the plaintiff and his brother were likely to pass and likely to see or be attracted to said dynamite caps; that on said 28th day of May, 1920, plaintiff and his brother took their father's breakfast to him at the shaft of defendant and, in returning home by their usual and customary route across the right-of-way of said railroad, were attracted by and picked up said dynamite caps, and that plaintiff and his brother carried said dynamite caps home and thereafter, while playing with the same, one of the dynamite caps exploded and plaintiff was seriously injured thereby. Said petition then set out in detail the injuries alleged to have been received by plaintiff, which said injuries he alleges to have been very serious and of a permanent character and prayed judgment in the sum of $30,000.

The answer of defendant denied that it was engaged in sinking a shaft as alleged in the petition or that it used

dynamite or caps thereat through its agents, servants or employees. Such answer further alleged in substance that the clay mining operations at said shaft were being carried on by one James W. Reid under a lease taken in the name of the defendant; that said Reid was an independent contractor, responsible only for results and over whom the defendant had no power of direction or control. Said answer set out the contract for the payment to be made by the defendant to said Reid. The answer further alleges that the injuries which plaintiff sustained were caused by his own negligence and the negligence of his father and mother; that plaintiff took a percussion cap voluntarily, and roughly handled the same and applied fire and heat thereto in the presence of his father and mother and with their knowledge and consent, and that plaintiff's mother had said cap in her possession and examined and tested the same, probing into it and after ascertaining its condition and contents, delivered the cap to the plaintiff, and that the act of plaintiff's mother in delivering said cap to plaintiff thereafter constituted an independent, direct and proximate cause of whatever injury plaintiff received by reason of said cap exploding. The reply was a general denial.

At the time of his injury, May 28, 1920, plaintiff was seven year old, and prosecuted the action by his father as next friend. The undisputed facts are that one J. W. Reed (or Reid) and two shifts of men working under his direction were engaged in sinking and enlarging an old mine shaft near Fulton, Missouri, for the purpose of mining fire clay therefrom, to be used by defendant in its manufacturing business at its plant at Mexico, Missouri. Plaintiff's father, Henry Diehl, was employed on the morning shift at said shaft. The family consisted of Henry Diehl and his wife and at least two sons, August, the plaintiff, and Freddie, ten or eleven years of age. The Diehl family lived near the mine. Henry Diehl went to work very early in the morning, and for at least two or three mornings before the date of the injury the plaintiff and Freddie took his breakfast to him at about seven

o'clock a. m. In some manner and somewhere the boys came into possession of four unexploded caps used to set off the charges of dynamite. Dynamite, fuse and caps were used in the shaft where Henry Diehl worked and a supply of the same was kept in the office or shed at the shaft. Two or three days prior to plaintiff's injury one of the men employed on the afternoon shift had removed four dynamite caps and fuses to which they were crimped, and one Ernest Custard had twisted the fuses together and had thrown them, together with the caps attached to them, to a point across the tracks of the Chicago & Alton Railroad into some grass and weeds. The Diehl home was west of the railroad tracks, and the clay mining shaft on the east side. In bringing their father's breakfast the boys passed within at least fifty feet of the spot where the dynamite caps had been thrown.

After securing possession of the dynamite caps above mentioned (they testified fuses were attached to the caps when they found them and that they threw away the fuses), the boys took them home and showed them to their mother. She probed into one of them with a stick and handed it back to Freddie, the older brother. He afterwards gave one of the caps to August, and he picked up a small stick from the fire where his mother had been doing her washing and inserted such stick into the cap. The stick had fire on that end and this doubtless caused the cap to explode. Plaintiff's left hand was so injured that amputation of all or a part of two fingers and the thumb resulted. His right eye was completely destroyed, so that the eyeball was afterwards removed, and his left eye was injured to such an extent that he was slowly losing his vision in that eye at the time of the trial. The seriousness of the injury is not controverted, and no contention is made that the verdict is excessive.

In addition to the undisputed facts, the evidence of plaintiff tends to show that Freddie Diehl found the four dynamite caps and fuses at the point on the railroad right-of-way where Ernest Custard threw away four caps

and attached fuses; that at least the plaintiff did not know what they were. Henry Diehl was asked if he had not stated that the boys secured the dynamite caps at an old coal mine dump, and upon his denial of this statement witnesses were produced to show that he had made such statement.

It also appears that, a few days after the accident and after it became noised about that suit was to be filed against defendant to recover damages for the injury received by the Diehl boy, seven or eight men employed at the fire clay shaft engaged in a search of the railroad right-of-way where Ernest Custard had thrown the fuses and unexploded caps, and after some effort, one of the men (not Custard) found four unexploded caps attached to fuses twisted together. Custard's testimony tended to show that they were the identical caps and fuses he had thrown away. These caps and fuses were produced at the trial. So far as the evidence discloses, caps were thrown away but once, although it was not an infrequent occurrence that caps failed to explode because the fuse became wet and extinguished the fire before it reached the caps. The caps used were waterproof, but the fuse was not.

The sharpest issue of fact centered around the question of the relationship to the defendant of Reed and the men under him. Defendant contended that Reed was an independent contractor, responsible only for results and over whom it exercised no control or direction. Defendant's evidence tended to show that in April, 1920, it entered into an oral contract with Reed, by the terms of which Reed was to sink the shaft, mine fire clay therefrom and place the same upon railroad cars at Fulton to be shipped to defendant at Mexico; that Reed was to bear the expense of sinking the shaft and mining such fire clay and that defendant was to pay Reed for such fire clay on board cars at Fulton, the actual cost of mining such clay and placing it on such cars, plus ten cents per ton, the price not to exceed $1.25 per ton. This contract was verbal in so far as the arrangements between de-

fendant and Reed were concerned. The only writing offered by defendant on the point was the minutes of the meeting of its board of directors authorizing its president to enter into contract whereby the defendant "would advance the money to Reed to open up and develop his mine, and pay him a price that would allow him a profit out of which the money advanced could be returned to this company."

Defendant's evidence further tended to show that Green, Arthur and Pierson, president, general manager and engineer, respectively, of defendant, paid not to exceed one or two visits each to the fire-clay mine. They denied asserting any direction or control over Reed's operations. Several of the miners employed at the shaft testified that neither of the above officials of defendant ever, to their knowledge, undertook to give any directions or exercise any control at the mine. Green and Arthur testified that defendant was a buyer of fire clay and carried on no mining operations of its own, except at Mexico, where its manufacturing plant was located, but it appeared that defendant had been engaged in such mining operations at times previous to the Reed venture. Reed's testimony was to the same effect; that he at first contemplated carrying on the mine upon his own capital and soon found that he could not finance the undertaking; that some of his money was spent at first, but was soon exhausted. He produced about two thousand tons of fire clay when the miners' strike came on and work was suspended. He testified that he owed defendant about twelve hundred dollars for advancements to him on his mining venture. At the time of the trial he was working elsewhere for defendant as a foreman.

The lease to the premises where the shaft was being opened up was taken in the name of defendant and bound it to mine the premises and pay a royalty. Mr. Green, the president of defendant, explained that this was done in order to secure the company for any advances it might make to Reed. It appears from defendant's testimony that the first payroll was met from Reed's funds. Then

defendant sent Reed the money and he paid the men in cash. Thereafter the checks were drawn by defendant direct to the men employed at the shaft and to dealers furnishing various materials and supplies. It appears that all supplies purchased by Reed himself were charged to and paid by defendant. Defendant contended that Reed was to have advanced to him not to exceed $150 per month to keep himself and family going. Payrolls were put in evidence upon sheets designated "Weekly Report —Fulton Operations," wherein each employee's name was listed with his hourly rate, days and hours employed, total time employed, total salary, etc. On several of these sheets Reed was listed at $34.62 per week, which is only a few cents over $1800 for fifty-two weeks, or $150 per month. These lists were sent by Reed to defendant each week and defendant drew its checks and the items on said lists were thus paid.

It also appeared that defendant negotiated with the municipal electric light plant at Fulton for the installation of electric current for power at the shaft and referred to the shaft as "our mine shaft." Defendant also sent its engineer, Pierson, to the shaft to take steps towards securing and locating a railroad switch or spur track to serve the mine, and Reed consulted Pierson about plans for a tipple, and that Pierson prepared some plans, possibly only for the foundation to said tipple. Materials, supplies and tools of various sorts were furnished to Reed by the defendant, which articles defendant claimed were duly charged by it to Reed's account.

Upon the pleadings above set out in substance and under the evidence we have detailed, the jury returned a verdict in favor of the plaintiff in the sum of ten thousand dollars. After unsuccessful motion for new trial, defendant has appealed.

I. Appellants contend that the trial court should have directed a verdict for defendant. The question naturally divides itself in two parts. First, is there substantial evidence that Reed and the men working under him were in the employ of defendant? Second, assuming that defend-

ant is liable for the acts of Reed and his men, under the doctrine of *respondeat superior,* has plaintiff made out a case of negligence on the part of such employees caus-ing the injury to plaintiff?

(a) Appellant contends that the evidence does not show Reed and the men under him were working for or controlled by defendant, but on the contrary, that the evidence shows conclusively that Reed was an independ-ent contractor. Plaintiff offered in evidence Relation of two contracts or leases covering the premises Master and Servant. where the shaft was operated. The latter con-tract (dated May 15, 1920) gave defendant the sole right to mine and remove fire clay from such prem-ises and required defendant to conduct mining opera-tions thereon in a thorough, safe, careful and workman-like manner and to support the roof of the rooms and entries, as far as possible with careful mining. These provisions imply retention of supervision by defendant to see that they were properly performed by Reed. The lease bound defendant to pay seven and a half cents per ton for all fire clay removed from the premises.

Reed submitted weekly reports to defendant as a basis for issuance of checks by defendant to meet payrolls, including salary to Reed. Defendant furnished supplies and materials to Reed. All supplies purchased of others by Reed were charged to the defendant. Defendant ne-gotiated for electric power and for installation of rail-road switch and spur. These facts are those usually ex-pected to be found in cases where the power of direction and control is retained by one where the work is done by another and where the relationship of master and serv-ant exists. Such facts are not controverted by defend-ant, but it seeks to explain away their significance. Such facts constitute sufficient evidence to authorize submis-sion to the jury of the question whether Reed and the men working under him were servants of defendant. [Porter v. Withers Estate Co., 201 Mo. App. 27.] Such facts constitute substantial circumstantial proof of the exist-ence of such relationship and not merely proof of facts

from which such relationship may be presumed or inferred in the absence of proof to the contrary. The case of Guthrie v. Holmes, 272 Mo. 215, 198 S. W. 854, can be thus distinguished. They are facts to be weighed by the jury against proof of other facts which tend to show such relationship did not in fact exist, even though such other facts are uncontradicted.

In Gayle v. Mo. Car & Foundry Co., 177 Mo. l. c. 447, GANTT, P. J., quoted approvingly from an authority not cited: "An express contract to pay by the job is always strong evidence that the relation of master and servant does not exist."

It would seem that the converse ought to be true that where the alleged independent contractor was paid a weekly or monthly wage or salary, such evidence tends to show that the relation of master and servant did exist.

(b) Was a case of negligence on the part of Reed and the men under him made out by plaintiff? Unexploded dynamite caps are extremely dangerous agencies. They are easily exploded and most deadly in their effect when exploded. One of the men working under Reed, in pursuance to instructions given to him, threw out four unexploded dynamite caps attached to fuses. They were thrown upon the surface of the ground where they might be found and picked up by children. It needs no evidence to demonstrate that such articles are attractive to children. It was for the jury to say whether reasonably prudent and careful men would have so disposed of such a dangerous agency at a place where such caps might be found and cause injury. The plaintiff and his brother found the caps and plaintiff was injured thereby. Reed knew these and other children had been, and were likely to be, about the premises. We think these facts sufficient to show actionable negligence. [City of Lubbock v. Bagwell, 206 S. W. (Tex.) 371; Cincinnati R. Co. v. Padgett, 164 S. W. (Ky.) 971; Eckart v. Kiel, 123 Minn. 114; Clark v. Powder Co., 94 Kan. 268; Miller v. Chandler, 168 Ky. 606; Barnett v. Mills, 167 N. C. 576; Crabb v. Wilkins, 59 Wash.

*Dynamite: Negligent Handling.*

302; Mathis v. Granger Brick Co., 85 Wash. 634; Sandeen v. Tschider, 205 Fed. 252.]

Defendant contends that the identical caps thrown out by Ernest Custard were recovered after a search and that plaintiff's father stated that the boys got the caps which caused the injury at an old coal mine dump. These issues of fact were resolved against defendant by the verdict of the jury upon substantial evidence and its finding is conclusive.

(c) Appellant makes the additional contention that the act of negligence charged was not the proximate cause of the injury because of the intervening act of plaintiff's mother in examining the dynamite cap and handing it back to the boys. At most this act was merely a concurring act of negligence and did not break the causal connection between defendant's negligence and the injury. [Mathis v. Granger Brick Co., 85 Wash. 642.] Besides, plaintiff's mother testified that she was ignorant of the dangerous character of the cap, a question for the jury.

Concurring Acts of Negligence.

The trial court did not err in refusing to direct a verdict for defendant.

II. (a) Appellant assigns the giving of instruction numbered one as error. The point made is that the petition charges negligence and such instruction put the case to the jury on the theory of intentional or willful injury and thus the instruction is a complete departure from the pleading. The portion of the instruction subjected to this criticism is as follows:

Purposely.

"The court instructs the jury that if you find and believe from the evidence in this case that any of the employees of the defendant, A. P. Green Fire Brick Company, *purposely placed* unexploded dynamite caps at a point where such employees *knew*, or by the exercise of ordinary care should have known, that the plaintiff and his brother, Freddie Diehl, were likely to pass, and were *likely to be attracted* by such unexploded dynamite caps," etc. (Italics ours).

We do not think the instruction justly merits the criticism made of it. The word "purposely" is not used in the sense of wantonly or wilfully. It refers to the act of throwing the dynamite caps on the railroad right-of-way and not to the resulting injury. "Purposely" is used in the sense of intentionally, knowingly or consciously, as distinguished from accidentally or unwittingly. This is especially true in this instruction, because the use of the words wantonly and wilfully, ordinarily employed where wanton or willful injury is charged or relied upon, are not used. We think the ordinary juror would have no difficulty in so understanding the instruction and would know that the fact to be determined was whether the employees who threw the caps and fuse upon the right-of-way did so intentionally and not accidentally. However, it would have been better to have used the word "negligently" instead of "purposely."

It is difficult to see how defendant could have possibly been prejudiced by the use of the word "purposely." It placed a greater burden upon plaintiff than he was required to carry. All that the jury needed to have found was that the caps were negligently placed along the right of way. If the jury understood the meaning of the word "purposely" as wantonly, maliciously or wilfully, as those words are used where punitive damages are sought, then indeed was plaintiff's burden of proof a heavy one. Webster's International Dictionary defines "purposely" as "with purpose or design; intentionally; with predetermination; designedly." Such intentional or predetermined act, however, could not be understood as applying to the *results* of throwing away the caps, but only to the *act of placing them* where they were afterwards found by plaintiff, if he did find them there. Cases drawing the distinction between mere negligence and wantonness, relied upon by defendant, are therefore not helpful here. We overrule the assignment

(b) Appellant makes the additional complaint of instruction numbered one, that it assumes that dynamite

299 Mo.—42.

caps are dangerous. The general rule, and one not requiring citations of authorities to support, is that instructions may not assume the existence of controverted facts. We have carefully examined the record to determine whether an issue of fact was really made on the dangerous character of unexploded dynamite caps, and find no such issue was made under the evidence. The evidence shows without controversy that only one of the fuses attached to the caps thrown away by Ernest Custard was lighted at all, and therefore nothing was done to cause the remaining three of them to be affected by their attempted use. The fire in the fourth one never reached the cap at all. The caps were waterproof and were therefore still capable of being exploded after removal. Custard said Reed told him to throw the caps away where nobody would get them and that he had no authority to remove the caps from the fuse.

Lyle Harris, the man who reported the discovery of the four caps and fuses after the injury of the plaintiff, testified that the usual practice was to put in a fresh charge when a charge failed to explode and to fire them altogether in the hole without removal and that it was considered an improper practice to pull out the unexploded charge and that a man took chances on his life in doing it.

We think the court can take judicial knowledge of what every man knows, to-wit, that unexploded dynamite caps, still containing a live and highly explosive element, are dangerous agencies. For this reason and under the state of the evidence in the record, the instruction was not erroneous, even if it may fairly be said to assume that the caps were dangerous. However, it would have been safer practice to require the jury to find that the caps were dangerous.

III. Instruction four is criticised for the reason that it erroneously placed the burden upon the defendant to prove by the preponderance of the evidence that Reed

was an independent contractor and not an
**Burden of Proof:** employee of defendant.   The instruction
**Independent**
**Contractor.**       reads as follows:

"The court instructs the jury that defendant contends that the witness James W. Reed was an independent contractor, and not an employee of the defendant company. On this issue the court instructs you that it devolves upon the defendant to show by the greater weight or preponderance of the evidence that the said Reed was an independent contractor and not an employee of the defendant, and unless the defendant has so shown you will find this issue against the defendant and in favor of the plaintiff; provided you further find and believe that the said Reed was at the time working on lands leased to the defendant."

The giving of this instruction was error. Plaintiff alleged the injury was caused by the negligent act of defendant's servant and the burden was upon plaintiff, through the whole case, to prove that Custard was a servant of defendant. Although defendant did plead that Reed was an independent contractor and employed the men working under him upon his own account, defendant could have shown this under a general denial. [Kaminski v. Tudor Iron Works, 167 Mo. 1. c. 470; Bragg v. St. Ry. Co., 192 Mo. 1. c. 351.]

The pleading filed and the proof offered by defendant that Reed was an independent contractor were simply for the purpose of controverting the pleading and proof that the negligent employee was a servant of defendant. Such proof tended to show that no cause of action ever existed against defendant. The burden was upon plaintiff to show the existence of such relationship. The fact that defendant pleaded that Reed was an independent contractor does not shift the burden of proof.

Under no view of the case did the proof of facts usually attending the relationship of master and servant cast upon defendant any greater duty than that of going forward with evidence to show that such relationship did not in fact exist. Even then the burden of proving

the relationship before the jury rested finally upon plaintiff. [Griffith v. Casualty Co., 290 Mo. 455, 235 S. W. 83.]

Since the issue of whether Reed and his men were employed by defendant (for whose negligent acts resulting in an injury to plaintiff the defendant must respond), or said Reed was an independent contractor employing and directing his own men (for whose negligent acts defendant cannot be held liable), was the most hotly contested and sharply drawn issue of fact in the case, such error was clearly prejudicial to defendant and compels reversal of the judgment.

Respondent relies upon Knoche v. Pratt, 194 Mo. App. 300, as authority for the correctness of this instruction. The case does not so hold. It was an action in damages for trespass by excavating over the line of defendant's premises upon plaintiff's premises, causing plaintiff's wall to fall. The court held that plaintiff's evidence made a prima-facie case that the excavating was done by defendant's servants, and that there was neither pleading nor proof that such excavating was done by an independent contractor. The question of whose duty it was to carry the burden of proving the work was done or not done by an independent contractor was not in the case.

IV. Appellant complains of error in that the trial court refused its instructions marked A, A-1 and B. A-1 told the jury there was no evidence that the dynamite cap which exploded and injured plaintiff was thrown upon the railroad right-of-way by Reed or any of the men working under him. We have set forth the evidence sufficiently to show that there was evidence that Custard threw caps upon the right-of-way and that plaintiff and his brother found them there. The jury was not bound to believe defendant's evidence tending to show that the identical caps were found there after the injury, even though such evidence was uncontradicted. [Gannon v. Laclede Gas Light Co., 145 Mo. 502.]

*Uncontradicted Evidence.*

Instructions A and B dealt with the situation growing out of the examination of one of the caps by plaintiff's mother and the handing back of the same by her to Freddie Diehl. Even if this act on her part was negligence, it was but a negligent act concurring with the negligent act of defendant and was not sufficient to break the causal connection between defendant's negligent act and the injury. [Mathis v. Granger Brick Co., supra.] The instructions were properly refused.

*Concurrent Negligence.*

This is an action by the child for personal injuries and not an action by the parent for loss of service of such child caused by such injury, and no negligence of plaintiff's mother is imputable to him.

V. Appellant assigns error in the refusal by the trial court of its instructions marked C and D. In Instructions 1, 2, 3, 4, 5 and 7, requested by defendant and given by the court, the defense of independent contractor was fully placed before the jury and appellant cannot justly complain of refusal of C and D, which simply "rang the changes" on the same proposition.

*Reiteration.*

VI. Appellant complains of instruction numbered 3, given at plaintiff's request, which was as follows:

"The court instructs the jury that by the term 'proximate cause,' as used in these instructions, is not meant the cause nearest in time or physical sequence, but it is that cause without which the injury would not have happened, and from which the injury, or a like injury, might reasonably have been anticipated."

*Proximate Cause.*

Defendant cites no authority sustaining its criticism of the wording of the instruction. The instruction properly stated the law. The mere fact that the court did not tell the jury the effect of an intervening act of negligence, when the evidence fails to show the intervention of such an independent act of negligence as to relieve defendant of liability, does not render the instruction bad.

VII. We think the court should not have admitted evidence that the shaft was known as the A. P. Green Fire Brick Company shaft. Such evidence is merely hearsay.

**Evidence.**

Nor do we think the physician should have been permitted to testify that the condition of the plaintiff's left eye was caused by the injury. [Castanie v. U. Rys. Co., 249 Mo. 192; Jackman v. Ry. Co., 187 S. W. 786.] In the cases cited the fact that the injury was received was disputed and therefore such testimony was held prejudicial, and we hardly think it would be reversible error in this case where there was no question that the injury was caused by the explosion. Yet the condition of the left eye might have been due to improper care after the injury. The proper, and usually the safest, way to make such proof is to show by the physician that the condition might or could have been caused by the injury.

Henry Diehl should not have been permitted to testify that he told a witness called to impeach him that the boys found the cap at defendant's mine when they brought his breakfast to him. He had previously been asked on cross-examination whether at a certain time and place he had not told witness Wilfley that the boys found the caps on an old coal bank. He denied this and Wilfley was called to testify that Henry Diehl did make such statement. That should have closed the matter. It was not necessary to recall Diehl to make further denial. If he made a different statement to Wilfley, it was wholly immaterial.

VIII. For error in giving Instruction four, requested by plaintiff, it results that the judgment should be reversed and the cause remanded for new trial. Let our order issue accordingly. All concur.