KANSAS CITY EX REL. MARY ADELINE BARLOW, by HAZEL BARLOW, Her Mother and Next Friend, v. W. L. ROBINSON, D. MARTIN and UNITED STATES FIDELITY & GUARANTY COMPANY, Appellants.—17 S. W. (2d) 977.

Court en Banc, May 25, 1929.

*Otto P. Higgins* and *Inghram D. Hook* for appellants.

*John F. Cell* for respondent.

1054

DAVIS, C.—This is an action upon a surety bond against a principal and a surety. An ordinance of Kansas City prohibited any person blasting within the city limits without first obtaining a permit to be issued after the applicant had entered into a bond in the sum of not less than $100 nor more than $10,000, conditioned on the careful and prudent use of explosives, and the payment of any and all damages caused any person by the use thereof, and permitting any person to sue on such bond in his own name for any damages caused by the use of such explosives. The execution of the bond is averred and its condition is alleged to have been broken by the principal's failure to carefully and prudently use explosives by negligently permitting such explosives to remain in an open and unlocked place, whereby plaintiff, a minor, was injured by the use thereof. The jury returned a verdict for $5000, the amount of the bond, and the defendants appealed from the judgment entered thereon.

The plaintiff, during the course of the litigation in the trial court, filed three petitions. The second amended petition avers that plaintiff's mother was appointed next friend; that Kansas City is the obligee of the bond, which was taken for the use of any person, including plaintiff, who might suffer injury by reason of a breach of its condition. That Robinson, the principal in the bond, is a contractor, and that the United States Fidelity & Guaranty Company, engaged in the general bonding and insurance business, is the surety therein. That on March 5, 1923, until after April 8, 1923, Robin-

son was engaged in excavating and installing a sewer connecting certain buildings at or near Prospect Avenue and Swope Parkway with the main sewer, and in excavating Robinson blasted within the city limits, after obtaining from the city a permit so to do and after executing a bond in compliance with the ordinance. That one Martin and the company executed the bond as sureties. The bond provided that the principal and sureties were held and firmly bound to Kansas City in the sum of $5000 lawful money, for the payment of which, well and truly to be made, the defendants bound themselves and their representatives. The bond recited that defendant Robinson intended to do blasting within said city and that, if said defendant, his agents, servants and employees, should carefully use all explosives employed by them in doing such blasting, and if Robinson should pay any and all damages occasioned to persons and property by the use of such explosives, then said obligation to be void, otherwise to remain in full force and effect. The bond was dated March 5, 1923, and subsequent to its approval by the city authorities, the permit issued. A breach of the bond was averred in that Robinson, in making sewer connections and in blasting, used and kept on hand explosives and dynamite caps, which were powerful and dangerous agencies and attractive to children, and that Robinson failed to carefully and prudently use such explosives and negligently permitted dynamite caps or explosives to remain between blastings in the basement room of a building near the corner of Prospect Avenue and Swope Parkway, the entrance to which was not fastened or locked, thus leaving them in an open, unsecured and unguarded place in a thickly populated place where children were likely to find them; that Robinson' knew, or could have known, the dangerous character of the explosives. The petition further avers that a week or ten days prior to April 8, 1923, certain children, including the young brothers of plaintiff, entered the basement of said building and there found explosives, which were negligently left there, which they carried to the home of plaintiff. That plaintiff was not aware of the dangerous character of the dynamite caps or exploders. That on April 8, 1923, while plaintiff was handling and playing with one of such fuses and dynamite caps, said cap exploded, greatly injuring her. That said caps were permitted by Robinson to remain in said place in violation of Section 619, Article 8, of the Revised Ordinances of 1909, of Kansas City, reading:

"No person shall do or cause to be done any blasting within the city limits without first obtaining from the City Engineer a permit therefor, which shall be issued only on condition that the City Engineer is satisfied that the applicant is, in every particular, a safe, careful and suitable person to use, and an expert in the use of, all

explosives used in blasting, but no permit shall, under any circumstances, be issued to anyone until the applicant therefor has entered into a bond to Kansas City, in the sum of not less than one hundred dollars, nor more than ten thousand dollars, as the City Engineer may require, with at least two securities, to be approved by the City Comptroller, conditioned that such person will carefully and prudently use such explosive, and will pay and all damages caused any person by the use thereof. And any person may sue on such bond in his own name for any damages caused him by the use of such explosives.''

Because of the failure of defendant Robinson to perform the conditions of the bond, requiring him to carefully and prudently use all explosives in said blasting operation and as a direct result of the breach of the bond, it is alleged that plaintiff sustained dangerous and permanent injuries. The bond, filed as an exhibit to the petition and introduced in evidence, reads:

''Know all Men by these Presents:

''That We, W. L. Robinson as principal, D. Martin and ———— as securities, are firmly held and bound to Kansas City, Missouri, in the sum of Five Thousand and no/100 ($5000) Dollars lawful money, for the payment of which, well and truly to be made, we hereby bind ourselves, our heirs, executors and administrators, firmly by these presents.

''The Conditions of the above obligations are as follows:

''Whereas, Said W. L. Robinson, principal herein, intends to do blasting within the corporate limits of said city.

''Now, Therefore, If the said W. L. Robinson, his agents, servants and employees, shall carefully and prudently use all explosives employed by him in doing such blasting and if the said W. L. Robinson shall pay any and all damages occasioned to persons and property by the use of such explosives, then this obligation shall be void, otherwise to remain in full force and effect.''

The bond was dated March 5, 1923, and signed by Robinson, Martin and the United States Fidelity & Guaranty Company. It was approved by the city comptroller, and on March 5, 1923, the city engineer issued Permit No. 916. The record develops that no judgment was obtained against Martin, because service was not had upon him.

The evidence warrants the finding that Robinson was issued a permit to use explosives and blast with respect to a certain sewer leading from private buildings to the main sewer at or near Prospect Avenue and Swope Parkway in Kansas City, upon the giving of the bond previously set forth. In a basement of a building near the corner, one of defendant's employees stored dynamite caps or exploders, the door to which was unfastened and unlocked. Children, includ

ing plaintiff's two small brothers, while playing thereabout, entered the basement of said building, and on the floor found the dynamite caps wrapped in brown paper. Thinking that they were radio parts, plaintiff's brother carried them to his home, laying them on the bench in the back yard. Living in the same home with plaintiff, her mother, sister and brothers, was one Wilson, thirty-two years of age. Occasionally Wilson purchased an old automobile, for the purpose of junking it and selling the parts. Having one on hand at this time, he took from it a magneto, intending in playing with the children to give them an electric shock. Unable to do so by the fact that he did not have wire sufficient for the purpose, the small brother of plaintiff suggested that he had some wires in the yard and immediately obtained them. Neither Wilson nor the children nor their mother knew that dynamite caps were affixed to the wires. While they observed an enlarged portion the size of a lead pencil and about an inch in length, they stated that they had never before seen a dynamite cap and did not know what it was. Disengaging one of the caps from entanglement with the others, Wilson attached it to the magneto and gave the opposite wire to the small brother of plaintiff to hold in his hand, and placed the dynamite cap in the hand of plaintiff. Upon turning on the magneto there was a loud report, the force of the resulting explosion throwing the children to the floor and mangling plaintiff's hand so that about a third of her arm was later removed by operation. Plaintiff was six years old. Other relevant facts, if any, will be found in the opinion.

I.  In their separate answers defendants aver that the Kansas City ordinance recited is unconstitutional, null and void, and attempts to take the property of defendants without due process of law, in violation of Section 30, Article II, of the Missouri Constitution, and Article XIV of the Amendments to the United States Constitution. In briefing their case, defendants fail to discuss or notice the question of the ordinance violating our State Constitution, consequently abandoning that issue. However, with respect to the Federal Constitution the defendants have timely raised a Federal constitutional question, which they have kept alive, thus vesting this court with appellate jurisdiction.

II.  The first proposition that confronts us is the constitutionality of the ordinance, which defendants assert is in violation of Article XIV to the Amendments of the United States Constitution,

commonly known as the due-process clause. Defendants admit that such portion of the ordinance as requires the obtention of a permit to blast is within the proper police power of the city. They do not deny that Kansas City under its general powers may require a bond for its own protection and indemnification. Their position is that, unless the Legislature expressly sanctions it, a municipality is without power or right to create between third persons a cause of action, resulting that that portion of the ordinance reading, "And any person may sue on such bond in his own name for any damages caused him by the use of such explosives," is not a proper exercise of the police power and is in excess of the powers of the common council. It is here apropos to quote the pertinent portion of the Charter of Kansas City which empowers the common council, "To direct, regulate or prohibit the storage, manufacture, sale or use of gun powder and all combustibles, explosives and dangerous materials within the city . . ." It is the position of defendants that this section of the charter does not purport to give power to the council to enact an ordinance creating in favor of a third person a cause of action.

To digress for a moment, we find that, under Section 16, Article IX, of the Missouri Constitution, Kansas City had the power to frame a charter for its own government, and we take judicial notice that it is a city in this State having a population of more than 100,000 inhabitants, and that, in accordance with the Constitution, it framed its own charter. We have held that charter provisions, by virtue of the authority of the Constitution, have the force and effect of statutes passed by the Legislature, and are of equal dignity. [Kansas City v. Oil Co., 140 Mo. 458, 41 S. W. 943; Sluder v. Transit Co., 189 Mo. 107, 88 S. W. 648; Siemens v. Shreeve, 296 S. W. 415; State ex rel. v. Lucas, 296 S. W. 781; State ex rel. v. City of St. Louis, 2 S. W. (2d) 713.]

It is evident, however, that the words "direct" and "regular," as used in the section of the charter quoted, empower the Council of the city of Kansas City to enact an ordinance creating a cause of action in favor of a third person. The words are correlated and are defined, respectively, "to regulate the course or conduct of," and "to govern by rule or system." They are comprehensive and give plenary power to the council to pass ordinances directing and regulating the use of explosives within the city. The power to direct and regulate, by virtue of the charter provision, is the power to prescribe a rule by which the storage, manufacture, sale or use of explosives is governed. In Gibbons v. Ogden, 9 Wheat. 1, 1. c. 189, construing the commerce clause of the Federal Constitution, "The Congress shall have power . . . to regulate commerce with for-

eign nations, and among the several states, and with the Indian tribes," the word "regulate" is defined, in substance, as the power to prescribe a rule by which commerce is governed. Under this power Congress has enacted statutes providing a cause of action in favor of one injured by the acts of another in violation of the Sherman Anti-Trust Act. The charter provision, directing and regulating explosives, expressly and by fair implication gives Kansas City the power and right to enact the ordinance in controversy, and it follows the requirement of the ordinance as to the bond inures to the benefit of plaintiff if she comes within its purview. The ordinance does not conflict with the Federal Constitution.

III. Another contention of defendants is that the negligence of Wilson was the intervening proximate cause of plaintiff's injury, and for that reason defendants were entitled to a directed verdict. It is the general rule of law that to leave exposed and unguarded, on accessible premises, an explosive which is found by trespassing children is negligence. [11 R. C. L. 664.] It is said in 25 Corpus Juris, 192: "One whose business requires the use of explosives must use such care and caution in handling or guarding them as prudent and careful persons whose business requires the use of such explosives ordinarily exercise."

Wilson was a man of mature years. He could read and write and was able to dismantle and repair automobiles. He knew something about electricity, including magnetos and the completion of circuits. The dynamite cap was brought to him by Woodrow Barlow and he attached it to the magneto, placing the cap in the hands of plaintiff. But he stated that he did not know the nature of the cap.

Defendants assert that the acts of Wilson broke the causal connection of their original negligence. It is evident from Wilson's statement that he did not understand the character of cap, and we must assume that he told the truth, which an inference from the evidence warrants, for a reading of the evidence seems to show that he was a kindly man, and his relationship with the Barlow family cordial. If he understood the nature of the cap, his acts were criminal, which inference is not justified. The original negligence of defendants in leaving the caps exposed and unguarded, as was done where children of immature understanding and judgment might find them, set in motion a chain of causation, the result of which defendants could readily have anticipated. The injury to plaintiff could not have resulted without the defendants' original negligence in exposing the caps and the intervening act of Wilson was, at most, a concurring cause, which failed to break the causal connection of defendants' original negligence with the injury. Relative to defend-

ants' negligence, the plaintiff made a submissible case. [Diehl v. Green Fire Brick Co., 299 Mo. 641, 253 S. W. 984; Mathis v. Granger Brick & Tile Co., 85 Wash. 634, 149 Pac. 3; Depew v. Kilgore, 117 Okla. 263, 246 Pac. 606.] This ruling also disposes of the contention that the trial court erred in refusing defendants' Instruction H, based on the postulate that Wilson's negligence was solely the cause of the injury.

IV. It is said that defendants' demurrers to the evidence should have been sustained because there was no proof of a violation of the terms and conditions of the bond. Defendants say that, while the ordinance permits any person to sue on such bond in his own name for any damage caused by the use of such explosives, yet the bond does not follow the ordinance in that regard, for it goes no further than agreeing to pay for any and all damages occasioned to persons and to property by the use of such explosives. It is argued that the difference between the ordinance and the bond is very important, and that the restriction in the bond to damages occasioned by the *use* of explosives limits liability on the bond to damage occasioned by its *use* in actual blasting, such as damage to persons and property from rocks hurled by an explosion. We do not agree to the limitation placed by defendants upon the word "use." We think a fair interpretation of it in connection with the context gives it a broader and more comprehensive meaning. The word "use" is employed in the ordinance and the bond both as a noun and a verb. As a verb, it is defined in its broadest scope, "to employ for the accomplishment of a purpose." As a noun, "suitableness or adaptability to an end." The force of the word "use" in the ordinance and bond should not be restricted to damages arising from the act of blasting, for the context develops an intent to afford those damaged in person or property a cause of action on the bond. The word "use" in the bond includes the idea of handling and it is accentuated by the further words "employed by him in doing such blasting." Moreover, the charter provision, empowering the council to direct and regulate explosives, having the force and effect of a statute, and the ordinance enacted in pursuance thereof, which acts upon those within the confines of the city, aids and broadens the terms of the bond. The primary purpose of the ordinance was to afford a cause of action on the bond to any one damaged by Robinson's negligent use of explosives. Such explosive was being used within the purview of that word when it was on or connected with the work then in operation. It is said that the caps while in storage in the basement were not in use within the terms of the bond. The city charter, empowering the council to direct

and regulate the *storage*, manufacture, sale and *use* of explosives is pointed to accentuate the distinction, but it is evident that the ordinance and bond mean that an explosive is in use when it is on or connected with the work. The dynamite caps were temporarily placed in the basement over night, but they had not been taken from the work, for they were still connected with it and thus were in use, as much so within the scope of the ordinance and the bond as though they had been left at the actual place of work. To say they were not in use while on or connected with the work would deny and improperly limit the plain intent of the bond and the ordinance when construed together. A survey of the record justifies the conclusion that the dynamite caps, temporarily deposited in the basement, were on and connected with the work, and so in use within the meaning of the bond and the ordinance.

In this connection, defendants rely on Gerber v. Kansas City, 304 Mo. 137, 263 S. W. 432. In that case the contractor's bond designated certain classes who were permitted to sue on it, and otherwise provided protection and indemnity to the city. On the facts developed the Gerber case is not in point, for the character provision and the ordinance, having the effect of a statutory enactment, aids and broadens the bond herein.

V. It is said that the bond gave no cause of action to the plaintiff. It is argued that a hiatus obtains between the ordinance and the bond, in that the former contains a provision permitting any person to sue on such bond, which provision is not found in the latter, and from which premises it is argued that the bond was given to indemnify Kansas City from actions or suits on account of injuries resulting to the public from blasting operations at the *locus* of the permit. Defendants say that Kansas City ex rel. v. O'Connell, 99 Mo. 357, 12 S. W. 791, Salmon v. Kansas City, 241 Mo. 14, 145 S. W. 16, and Gerber v. Kansas City, 304 Mo. 157, 263 S. W. 432, sustain their position. While we agree with the rulings in those cases, we do not think that the facts therein collated are of the same import with the facts here developed.

In Kansas City v. O'Connell, supra, it was held that the bond must be construed as a whole, that the charter provision gave the right to laborers to sue on the bond, but to no other class, that no statute aided plaintiff, and that, aside from the covenant as to laborers, the object and purpose of the bond was to secure a performance of the work according to the terms of the contract, and to protect, and save harmless, the city from damages occasioned by the negligent acts of the contractor and his servants.

· The case of Salmon v. Kansas City, supra, a suit for negligence against the city, is not at all in point. In Gerber v. Kansas City, the contractor's bond recited certain classes of persons only who were permitted to sue the city, and otherwise operated merely as an indemnity bond to the city. The facts presented were essentially the same facts found in the O'Connell case.

The facts in the case under consideration are essentially different from the facts in the cases relied on. The charter provision, having the force and effect of a statute, gives plenary power to the city to regulate the use of explosives by ordinance and the ordinance provides a cause of action in favor of third persons injured by the negligent use of explosives. It is said that the bond is one at common law, and is not as broad as the ordinance, but it is evident from the facts developed that the bond was executed in pursuance to the ordinance and that they must be construed together. Aided by the charter and the ordinance, a statutory equivalent, it is evident that the bond provides to third persons injured by the negligent use of explosives a cause of action on it, which by fair construction was plainly its object and purpose.

VI. Finally, defendants complain of plaintiff's main instruction. The pertinent portion reads: ''. . . and in this case if you further find from the evidence that the defendant William L. Robinson or his agents, servants or employees, caused, permitted or allowed certain unexploded dynamite caps or fuses which were brought by said defendant to said place for use in said blasting operations, to be placed and to remain at or in an unguarded and unlocked place where plaintiff and her brothers and other children were likely to go and be and were likely to be attracted by such unexploded dynamite caps and fuses, and that said defendant, William L. Robinson, his agents, servants and employees knew, or by the exercise of ordinary care could have known, that said children were likely to go to and be at said place and be attracted by said unexploded dynamite caps or fuses, then you are instructed that acts of said defendant, William L. Robinson, his agents, servants and employees, if you find they did so act, constituted a breach of the condition of said bond.''

It is the contention of defendants that, in entering the basement room, the boys were mere licensees and that the record is without proof that the premises were attractive to children, resulting that the instruction proceeding on that theory is erroneous.

The record develops that there was a toilet in the basement where the dynamite caps were left, which was used by street railway employees and which was unlocked and unguarded. It is common knowledge that children are likely to go to such places. It is also common knowledge that children are likely to become attracted to abandoned radio wires such as these children believed the fuses and

caps to be. Others used the basement besides defendants. They should not only have anticipated that immature children were likely to go to the unguarded and unlocked basement thus used by street railway employees, but they should especially have anticipated that immature children were likely to prowl thereabout and find the explosives negligently left in the basement. We think the evidence justified the instruction.

It follows from what we have said that the judgment is affirmed. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur, except *Walker* and *Blair, JJ.,* who dissent; *Atwood, J.,* not sitting.

WALKER, J. (dissenting):—One of the essentials to the jurisdiction of the Supreme Court upon an appeal in any case is that the ground therefor must appear in the record and be preserved in such a manner as to show that it has not been abandoned. Thus asserted and preserved, the right to a review is established.

In the instant case the constitutionality of the ordinance in question was the sole basis of jurisdiction. While properly made and persisted in throughout the trial it is not mentioned directly or inferentially in the motion for a new trial. In its absence therefrom we are without jurisdiction and on this ground the writer dissented from the report of Commissioner DAVIS, which a majority of the court subsequently adopted as its opinion in the case.

In addition to a general familarity with our procedure, both under the statute and the rules of court, I have supplemented that knowledge with a careful review of the cases in which the question of jurisdiction has been mooted and determined, and I find no instance in which jurisdiction has been asserted and maintained in which the sole ground for the same, however strenuously persisted in during the trial, has not been preserved in the motion for a new trial. Our most recent affirmative declaration of this rule appears in Macon County Levee Dist. v. Goodson, 14 S. W. (2d) 561. Other late cases are Keena v. Keena (Mo.), 3 S. W. (2d) 352; Morgan v. Willman (Mo.), 1 S. W. (2d) 197; City of Ferguson v. Steffen et ux., 300 S. W. (Mo. App.) 1039, 1041.

The rule under consideration is, however, so firmly established in our procedure and has heretofore been so uniformly enforced that a further discussion of the same seems unnecessary. It is enough, therefore, to say that whether a failure to observe the rule is due to inadvertence or a willful disregard of its binding force, we have nevertheless no jurisdiction in this case and it should be so held.

Equally elementary rules and as binding upon the limitation of our powers are, first, that parties to a suit cannot confer jurisdiction by consent (Toothaker v. Pleasent, 288 S. W. (Mo.) 38); and second, that it is the duty of the Supreme Court, within the defined limits of its power, to determine its jurisdiction, regardless of the fact that it may not have been challenged (Toothaker v. Pleasant, supra; State ex rel. Rucker v. Hoffman (Mo.), 288 S. W. 16). Jurisdiction, thus exercised, is promotive of justice; its attempted exercise in any other manner cannot be classified other than as an usurpation.