NEIL J. FUNK v. FULTON IRON WORKS COMPANY, Appellant.

In Banc, November 25, 1925.

1. **NEGLIGENCE:** Superintendent: Dual Capacity: Respondeat Superior. A superintendent invested with the duty of overseeing, directing and controlling workmen under him, with respect to the discharge of those duties, is not a fellow-servant of the workmen whose work he superintends, but a representative of the master; and if his sole duty is to superintend, his negligent act which causes injury to one of such workmen is not attributable to his employment in a common service, but to what he does as superintendent, and the rule of *respondeat superior* applies. And where his sole duties were "to instruct the men and tell them what to do" except when "something would stick and get wrong" he would "take hold of and help with it, just the same as any other foreman," his duties were to superintend, and he was not employed in any other capacity, and his doing of a manual act in connection with and as illustrative of the directions he was giving to the workmen was a mere incident to the discharge of his duty in directing the work, and within the scope of his employment as superintendent.

2. ———: ———: Anticipating Unforeseen Injury: Contributory Neg-
ligence. Defendant fabricated or put together the parts of heavy
sugar-cane mills and crushers, and the crane had placed in position
upon the bed plates a heavy iron apron, called the juice pan, which
was about five feet long, and inclined from an elevation of about
five feet above the floor at one end to eighteen inches at the other.
When it was placed over the bed plates it did not fit in between
them, and the workmen spoke to the superintendent, who stood
some distance away, and he came and asked plaintiff to hand him
an iron ram, and with it he struck the pan a few blows, which
forced the pan into position,. and he then directed the workmen to
bolt it. Plaintiff got under the inclined pan, and when he removed
the nut from a bolt it fell to the floor and rolled about three feet
from him, out into the open just beyond the lower edge of the in-
clined pan. He put the bolt in place, and hurriedly reached for
the nut, and when the superintendent, standing on the bed plate,
saw the bolt make its appearance through the juice pan, he pitched
the heavy ram to the floor near the lower edge of the pan, and it
fell upon plaintiff's hand just as he was in the act of picking up
the nut, crushing it. Plaintiff, under the juice pan, did not see
the superintendent pitch the iron ram, nor did the superintendent
known that the nut had rolled to the floor just beyond the edge of
the pan, or see plaintiff reach out his hand to pick it up. Held,
that (a) the superintendent's act was that of his defendant em-
ployer, and (b) that in order for his act to have been a negligent
one it was not necessary that he should have foreseen the particu-
lar consequences or the precise form of the injury which resulted
therefrom, but it is sufficient if under the circumstances he knew,
or ought to have known, that there was an appreciable chance
that some injury to workmen engaged about the machine would
result, and therefore recovery by plaintiff cannot be denied on the
theory that the superintendent, in tossing the ram to the floor,
could not anticipate that plaintiff at the same instant would extend
his hand beyond the lower edge of the juice pan; and (c) that
there was nothing in these facts that would have justified the
jury in finding that plaintiff was guilty of contributory negligence.

3. ———: Pleading: Negligent Act: Safe Place. The negligent act
having been specifically alleged, the subsequent characterization
of it in the petition as constituting a failure to furnish plaintiff a
safe place in which to work does not mislead or prejudice defend-
ant, where the proof shows that the injury was caused by the
pleaded negligent act and the case is submitted on that theory.

4. ———: Instruction: Foreman: Fellow-Servant. Where the negli-
gent act of the foreman caused plaintiff's injury and there is no

evidence to support a theory that he was employed in a dual capacity, an instruction which ignores the theory that he and plaintiff were fellow-servants is not erroneous.

Corpus Juris-Cyc. References: Master and Servant, 39 C. J., Section 585, p. 469, n. 80; Section 644, p. 537, n. 12; Section 672, p. 561, n. 18; Section 740, p. 631, n. 66, 68 New; Section 1190, p. 968, n. 29; Section 1344, p. 1157, n. 18; Section 1373, p. 1194, n. 35; Section 1469, p. 1279, n. 47. Respondeat Superior, 34 Cyc., p. 1673, n. 98. Trial, 38 Cyc., p. 1636, n. 22.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*Holland Rutledge & Lashley* and *Robert L. Ailworth* for appellant.

(1) The court erred in refusing to give the peremptory instruction offered by appellant at the close of all the evidence. (a) Because McLord, while pounding a pan with a ram and throwing said ram to the floor, even if negligent, was merely acting as a co-servant, for which act plaintiff cannot recover. The same employee may act at times as a vice-principal and at other times as a mere servant. And the question as to whether negligence on his part constitutes negligence on the part of the master is determined by the nature of the act involved. Fogarty v. Transfer Co., 180 Mo. 490; Harper v. Railroad, 47 Mo. 580; Miller v. Railroad, 109 Mo. 356; Hawk v. Lumber Co., 166 Mo. 121; Bane v. Irwin, 172 Mo., 317; English v. Shoe Co., 145 Mo. App. 439; Rodgers v. Schiele, 148 Mo. App. 53; Radtke v. B. & B. Co., 229 Mo. 23; McIntyre v. Tebbetts, 257 Mo. 117. (b) Because under the testimony there was an utter failure on the part of the respondent to establish that his injuries were due to negligence on the part of any other employee of the defendant. When McLord threw the ram in question he was guilty of no negligence. The law is well settled that a man does his entire duty if he exercises ordinary care and acts as a man of ordinary intelligence would

act under the same or similar circumstances, and such a man is not required to foresee hazards which could not be reasonably anticipated by an ordinary person. Ward v. Dry Goods Co., 248 Mo. 348; Meifert v. Union Sand Co., 124 Mo. App. 49; Am. Brewing Assn. v. Talbot, 141 Mo. 674; Fuchs v. St. Louis, 167 Mo. 620; Goodrich v. Railroad, 152 Mo. 222; Hysell v. Swift & Co., 78 Mo. App. 39; Loehring v. Westlake Const. Co., 94 S. W. 747. (c) Because under the testimony of the plaintiff he was guilty of negligence as a matter of law. The law is well settled that where a servant fails to exercise ordinary care for his own safety he cannot recover against the defendant. (d) Because respondent utterly failed to establish the one assignment of negligence made by him in his petition, to the effect that the injury complained of by him was caused by failure on the part of the appellant to furnish plaintiff a reasonably safe place to work. The testimony shows that the place furnished was reasonably safe. Hence respondent cannot recover upon an entirely different claim, to-wit, that another employee was guilty of an alleged negligent act. The law is well settled that the plaintiff is limited to the act or acts of negligence alleged in his petition, and can recover for none other. Chitty v. Railroad, 148 Mo. 64; State ex rel. v. Reynolds, 272 Mo. 597; Black v. Met. St. Ry. Co., 217 Mo. 673. (2) The court erred in giving Instruction 1, at the instance of the respondent. (a) Because the case should not have been submitted to the jury at all, for the reason above assigned. (b) Because said instruction does not properly state the matters that enter into a determination as to whether McLord was or was not at the time in question acting as a vice-principal. The instruction is general and states absolutely that if McLord had authority to direct and control the plaintiff, then he was a vice-principal, utterly ignoring the "dual capacity" rule. The law is well settled in this State that the same man may at one time act as a vice-principal, and at another time as a fellow servant. Authorities above.

*A. J. Haverstick* for respondent.

(1)   McLord's exclusive duties were to supervise operations and direct the master's workmen, with no other duties assigned to him, by the master, or to be performed by him.   His act, when he injured the plaintiff, was the act of the master, and not an act of a common servant, and the master is liable.   Dayhorsh v. Ry. Co., 103 Mo. 570; Bien v. Transit Co., 108 Mo. App. 412; Strothers v. Milling Co., 169 S. W. 43; Loretta v. Columbia Can Co., 246 S. W. 998; Russ v. Ry. Co., 112 Mo. 45; Hutson v. Ry. Co., 50 Mo. App. 303; Strode v. Conkey, 105 Mo. App. 15; Donnelly v. Aida M. Co., 103 Mo. App. 351; Miller v. Ry. Co., 109 Mo. 355; Fogarty v. Transfer Co., 180 Mo. 501.   (2) As foreman, McLord's exclusive duties were to supervise operations, and direct the master's workmen, with no other duties assigned to him, by the master, or to be performed by him; and where he of his own volition did a manual act, and in performing it hurt a co-worker, it was his act as a foreman, and not as a fellow servant, and the master is liable.   Johnson v. American C. & F. Co., 259 S. W. 442; Strother v. Kansas City M. Co., 269 S. W. 43; McCall v. Nugent, 236 S. W. 328; Radtke v. Basket Co., 229 Mo. 15; McIntyre v. Tebbetts, 165 S. W. 761; Moore v. Ry. Co., 85 Mo. 588.   (3)   Where a foreman's exclusive duties are to supervise and direct the master's workmen, with no other duties assigned to him, or to be performed by him, there is no logical or reasonable distinction between his directing the act to be performed, and in him performing the act to be performed.   Hutson v. Ry. Co., 50 Mo. App. 300; Dayhorsh v. Ry. Co., 103 Mo. 576; Miller v. Ry. Co., 109 Mo. 356; Bien v. Transit Co., 108 Mo. App. 412; Donnelly v. Aida M. Co., 103 Mo. App. 351.

RAGLAND, J.—This case was first heard and submitted in Division One, following which an opinion was prepared.   While that opinion failed of adoption after

the transfer of the case to Court in Banc it sets forth the facts with admirable clearness and brevity. In stating the case therefore we adopt for the most part the statement of facts as contained in the divisional opinion, merely adding thereto such other evidentiary matters as in view of the conclusions finally reached are deemed pertinent.

"The.issues, such as they are, in this case, can be fairly gathered from the following excerpts from the pleadings, and a drawing found in respondent's brief, which for illustration we insert here.

A- Nut, plaintiff dropped and was picking up.

B- Ram falling on A and plaintiff's hand inside the mill.

C- Where plaintiff worked, stooped over under juice pan.

D- Open aisle beside the bed plate on which McLord stood.

"Defendant is a manufacturing corporation in St. Louis County, Missouri. It manufactured and put together sugar-cane mills and crushers, with other heavy iron products. In the petition the plaintiff says:

" 'That the defendant's said manufacturing plant is equipped with numerous, ponderous and heavy machines, cranes and hoisting devices used in the manufacture of the aforesaid mills, crushers and engines.

" 'Plaintiff states that on the 10th day of December, 1920, and long prior thereto, he was in the employ of the defendant, and that on the said 10th day of December, 1920, he was engaged as a machinist, with an erection crew of men, in the erection of a large and ponderous sugar-cane mill and crusher in the defendant's said plant, and under the orders and directions of the defendant's foreman in charge of said work.

" 'That at the time hereinafter referred to plaintiff with other mechanics in the employ of defendant was engaged in placing in position and securing a large and heavy bent plate or apron of a sugar-cane crusher mill.

" 'That whilst the plaintiff was in the discharge of the duties of his employment and in the exercise of due care and caution for his own safety, and engaged at work under and beneath said heavy bent plate in order to bolt and secure the same in position, and whilst plaintiff was so engaged, defendant carelessly and negligently suffered and permitted a large and heavy iron ram to be thrown and fall upon plaintiff's left hand, crushing and bruising the tissue, bones, tendons and other parts of all of the fingers of the plaintiff's left hand.

" 'Plaintiff state that his said injuries and loss is directly due and was proximately caused by the negligent failure of the defendant company to provide and maintain plaintiff with a safe place of work, whilst he was under and beneath said large bent plate and engaged in bolting and securing the same in position, with his upward view obstructed, in that the defendant failed to prevent said heavy iron ram from falling upon plaintiff's left hand.'

"The answer is short, and reads thus:

" 'Comes now the defendant in the above-entitled cause and leave of court having been first had and obtained, files this, its amended answer to plaintiff's pe-

tition filed herein. And for its amended answer, defendant admits that it is and at the times referred to in plaintiff's petition was a corporation duly organized according to law, engaged in the manufacturing business and operating a plant in the County of St. Louis, in the State of Missouri, and that, on the days referred to in plaintiff's petition, the plaintiff was employed as a servant of the defendant in said plant and was engaged in the line of his duty in assisting in the erection of a certain machine, and that several other employees of defendant were also engaged in said work at said time and place, and that whilst plaintiff was so engaged a piece of iron or steel fell upon plaintiff's hand and inflicted some injury upon him. And defendant denies all of the allegations in said petition contained.

" 'Further answering, this defendant says that whatever injuries were sustained by the plaintiff at said time and place were caused by his own negligence directly contributing thereto, in this, to-wit, that while plaintiff was engaged in working under a piece of machinery which completely obscured him from the view of other servants engaged in said work, he negligently dropped a nut from a bolt which he was inserting in said machinery and thereupon negligently and, without giving any warning to the other men engaged in said work of his intention to come out from under said piece of machinery, and without exercising ordinary care to ascertain whether any object was falling or about to fall, which might fall upon his hands, the plaintiff negligently reached out to secure said nut at a place where he knew, or by the exercise of ordinary care would have known, that at any moment falling objects were likely to fall upon his said hand and to inflict injury upon the same.

" 'Wherefore, having fully answered, this defendant prays to be hence dismissed with its costs.' . . . .

"Both parties have in their brief a drawing of the situation. They differ in that the one for defendant shows the lower end of the juice pan to be at or near the end of the bed plates, whilst the one for plaintiff shows to the contrary. Both give a fair view of the situation,

and the difference, to our mind, is immaterial. The facts of this case are few and simple. McLord was the superintendent of the erection floor of defendant's plant during the third shift of the twenty-four hours. This was the floor where the parts were assembled and put together into the finished machine. Plaintiff, Funk, and one Bernhardt (a co-worker) were on the third shift, which began work at eleven P. M. They reported to McLord, and asked what they should do. McLord told them to put in this juice pan just as soon as they could get the crane. The crane was used to bring the heavy parts to the place where needed, and to keep them there until they could be firmly and finally fixed in the machine to which they belonged. The mind's eye must be kept upon the drawing. Plaintiff and Bernhardt got the crane, and the juice pan was moved so that it was over these bed plates, shown in the drawing. They concluded that the juice pan would have to be trimmed down before it could be fitted in between the two bed plates. In this situation they spoke to McLord, who was some distance away (35 feet), and he came over to see what could be done. McLord took a position on one of the bed plates as shown in the diagram. Plaintiff stood beside him. He asked plaintiff to hand him an iron ram, which was three feet long, three inches in diameter, and weighed about sixty-five pounds; Bernhardt had a similar ram. The juice pan was placed in position and under McLord's directions Bernhardt struck it a few blows with his ram, as also did McLord. This process forced the juice pan into position, and plaintiff and Bernhardt were directed by McLord to bolt it in position, so the crane could be taken to other work. They had to stoop and get under the inclined juice pan in order to put in the bolts to fix it stationary in its place.''

When plaintiff removed the nut from one of the bolts which he was about to insert it fell to the floor and rolled to a point about three feet from him, out into the open just beyond the lower edge of the juice pan. He proceeded notwithstanding to put the bolt in; he endeavored to do it quickly, but the holes were not perfectly adjusted and

the bolt did not go in easily; he had "to wiggle it in; it took a little time to get it in." After he had gotten the bolt in place he hurriedly reached for the nut. In the meantime McLord had been standing on the bed plate, eighteen inches above the floor, holding the ram and watching for the bolt that plaintiff was inserting to come through into his view. As soon as the bolt made its appearance he pitched the ram to land on the floor near the lower edge of the juice pan. The ram fell upon plaintiff's fingers while he was in the act of picking up the nut, inflicting the injuries for which he sues.

Plaintiff could not see the action of McLord as to the iron ram. With respect to the situation as it appeared to McLord at the time he threw the ram, he testified:

"Q. You looked down to see the bolt come through? A. Yes, sir.

"Q. And then you threw the ram? A. Yes; sir; and then I pitched the ram at the end of the plate.

"Q. Did you look down towards the floor just as you threw it? A. Yes, sir; sure.

"Q. What did you see before you let go of the ram? A. I saw nothing.

"Q. You saw the floor? A. Yes sir.

"Q. Was anybody in the way? A. No, sir.

"Q. No hand there? A. No, sir.

"Q. And then you let go? A. Yes, sir; just pitched it down.

"Q. And the ram had gotten how many feet from the floor when you saw Funk's hand come out? A. About three or four inches to the floor before his hand came out.

"Q. And then immediately it was struck, of course? A. Yes, sir."

He also said:

"Q. Well, what did you do with the ram? A. I threw it out of my hand to the bottom of the juice pan, which was on a 45; and I threw it down square so it would not bounce back where these men was standing; just threw it square on the floor, and just about the time that the

ram got within three inches of the floor Mr. Funk came out from underneath of the plate with his hand, and it fell across his left hand.''

Previous to the throwing of the ram by McLord and when he had finished using the one he had, Bernhardt stepped off the bed plate and laid the ram on the floor.

· It was no part of McLord's duty to do manual work. He was superintendent of the erecting floor of defendant's plant and his sole duties were ''to instruct the men and tell them what to do.'' However, when ''something would stick and get wrong'' he would ''take hold of and help with it, . . . just the same as any other foreman; the same as the (general) superintendent.''

At the conclusion of plaintiff's case defendant asked an instruction in the nature of a demurrer to the evidence, which was refused. Defendant offering no evidence on its part the case was thereupon sumitted under instructions asked severally by both parties. There was a verdict for plaintiff assessing. his damages at $9850. From a judgment in accordance therewith defendant appeals.

There are two assignments of error: (1) the refusal of defendant's peremptory instruction at the close of the evidence; and (2) the giving of plaintiff's principal instruction. Appellant insists that it was entitled to a directed verdict for these reasons as it alleges: (1) McLord in pitching the iron ram which fell upon plaintiff's hand was acting in the capacity of a fellow-servant; (2) the pitching of the ram under the circumstances disclosed by the evidence was not negligence; (3) the alleged negligence proven was not the negligence pleaded; and (4) plaintiff was guilty of contributory negligence as a matter of law. The specific objections to plaintiff's main instruction will be noted when the instruction is taken up for consideration.

I. (a) It is appellant's contention that under the ''dual capacity'' doctrine McLord's act in throwing the ram was that of a fellow-servant. But on the facts it is

clear that that doctrine is without applica-

Superintendent:
Dual Capacity:
Common Service.

tion. The evidence is all one way that McLord's sole duties were to oversee, superintend and direct others in the prosecution of his employer's work. In considering such questions as the one presented here it is sometimes advantageous to recur to elementary principles. Under the general rule, *respondeat superior*: "A master is responsible for injury occasioned to a third person by any negligence or misconduct of which his servants are guilty while acting within the scope of their employment." According to the fellow-servant rule a master is not responsible for an injury to one of his servants resulting from the tortious act of another of his servants while they are engaged in the same common service. The latter rule is a mere exception engrafted on the former. It does not rest upon any logical basis and is therefore more or less arbitrary. In applying it there has been a great contrariety of decision by the courts as to what is a "common service." In its most obvious sense "common service" would include all the activities prosecuted in the business of the master which have for their purpose the attainment of one common end. But it is universally held that when an employee is invested with the duty of overseeing, directing and controlling workmen under him, with respect to the discharge of those duties, he is not a fellow-servant of the laborers whose work he superintends, but a representative of the master. So in this State it has long been settled that "where the master gives to a person power to superintend, control and direct the men engaged in the performance of work, such person is as to the men he superintends a vice-principal, and it can make no difference whether he is called a superintendent, conductor, boss or foreman." [Miller v. Railroad, 109 Mo. 356.] It frequently happens, however, that an employee is required by the terms of his employment: (1) to engage in a common service with his co-employees; and (2) to superintend in some measure the manner of doing the work, or perform some non-delegable duty of the master. In the event that a negligent act of

such an employee causes injury to one of his co-employees the master's liability depends upon whether such act was attributable to his employment in the common service, or whether it was one of superintendence. But no such question can arise where the employee's sole duties are to superintend. In such case whatever he does within the scope of his employment he necessarily does as superintendent. And with respect to what he does as superintendent the maxim, *respondeat superior,* applies. These general principles are either expressly asserted in our many decisions touching the matter, or are plainly deducible therefrom. [State ex rel. v. Ellison, 283 Mo. 532; McCall v. Dry Goods Co., 236 S. W. 324; Strother v. Milling Co., 261 Mo. 1; Fogarty v. Transfer Co., 180 Mo. 490; Russ v. Railroad, 112 Mo. 45; Miller v. Railroad, supra; Dayharsh v. Railroad, 103 Mo. 570; Hildman v. American Mfg. Co., 249 S. W. 99; Hancox v. Craddock-Terry Co., 229 S. W. 271; Bien v. Transit Co., 108 Mo. App. 399; Hutson v. Railroad, 50 Mo. App. 300.]

In the instant case McLord's sole duty was to superintend, to direct others. He was not employed in any other capacity. Whatever he did therefore within the scope of his employment was done as superintendent, as his master's representative. And the doing of a manual act by him in connection with and as illustrative of the directions he was giving was not without the scope of his employment. His taking the ram from plaintiff and himself striking the juice pan to force it into position was merely incident to the discharge of his duty of directing the work.

For the reasons indicated appellant cannot be absolved of responsibility for McLord's act in pitching the ram, if negligent, on the ground that it was the act of a fellow servant.

(b) Appellant contends that McLord in tossing the ram to the floor was not negligent because he could not anticipate that plaintiff would at the same instant extend his hand out beyond the lower edge of the juice pan. But in order for his act

Anticipating Injury.

to have been a negligent one it was not necessary that he should have foreseen the particular consequences or the precise form of the injury which resulted from it. It is sufficient if under the circumstances he knew, or ought to have known, that there was an appreciable chance that some injury to workmen engaged thereabout would result.

McLord stood on the bed plate, eighteen inches above the floor, watching for the appearance of a bolt which plaintiff was endeavoring to put through. As soon as the bolt made its appearance he "pitched the ram to the end of the bed plate (juice pan)." The lower edge of the juice pan was sixteen inches above the floor. Immediately behind and under it two men were at work in a stooping position. They could not see McLord; nor did they have reason to anticipate that he would throw the ram. The ram was of metal, three feet long, three inches in diameter and weighed sixty-five pounds. Upon its striking the floor it was, as McLord well knew, likely to bounce and roll, notwithstanding his efforts to throw it down "square." At the time it was thrown the situation may not have been such as to suggest to an ordinarily prudent person that plaintiff would likely extend his hand beyond the juice pan, although the nut belonging to the bolt he was inserting was, and for an appreciable length of time had been, lying there in plain view. Notwithstanding, is it not true that McLord knew, or by reason of the common experience ought to have known, that there was an appreciable chance that the men under the juice pan, unrestrained by knowledge that such a ponderous missile was about to be thrown into their immediate proximity, would take such positions or make such movements incident to the performance of their work as would place them in the line of its descent, or so near thereto as to be struck by its bounding or rolling? When Bernhardt had finished using the ram he had, he stepped down off the bed plate and laid the ram on the floor. Did McLord exercise ordinary care in throwing his? The question is an exceedingly close one,

but we think one with respect to which reasonable minds might well differ. It was therefore for the jury.

(c) It is claimed that the allegations of the petition were not supported by the proof in that a negligent failure to furnish plaintiff a safe place in which to work was pleaded, whereas the proof tended to show that his injury was caused by the alleged negligent act

Pleading. of an employee. The negligent act was specifically pleaded, the subsequent characterization of it in the petition as constituting a failure to furnish a safe place to work in nowise misled or prejudiced the defendant. The contention is overruled.

(d) There was nothing in the evidence that would have justified the jury in finding that plaintiff was

Contributory Negligence. guilty of contributory negligence. Certainly the court could not have so declared as a matter of law.

II. In the principal instruction given for plaintiff the jury were told, "that if you find and believe from the evidence that Robert McLord was in the employ of defendant as a foreman and in charge of the men in the employ of defendant, engaged in the erection of a sugar-cane crusher mill, and by virtue of his employment

Instruction: Dual Capacity. and position, had immediate control and direction of the plaintiff and other employees, and had authority to direct and control plaintiff's work, then the said Robert McLord was a vice-principal and was not a fellow-servant of the plaintiff." With respect to this feature of it the instruction is said to be erroneous because it ignores the dual capacity of the foreman. But there was no evidence upon which to base a submission of the question of dual capacity. The evidence without contradiction at any point, as we have already indicated, was to the effect that McLord's sole duties were "to instruct the men and tell them what to do."

A number of other criticisms are leveled at the instruction but they are so plainly without merit that their enumeration and discussion would not furnish a suf-

ficient justification for the further lengthening of this opinion.

As the record discloses no reversible error the judgment of the circuit court is affirmed. All concur, except *Woodson J.*, absent, and *Atwood J.*, not sitting.