PETER PANKE v. WILL F. SHANNON, Appellant.—No. 40835.—212 S. W. (2d) 792.

Division One, June 14, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, July 12, 1948.

*Wm. Waye, Jr., Moser, Marsalek, Dearing & Carpenter, W. E. Moser* and *G. W. Marsalek,* for appellant.

*Walker Wooldridge* and *Clement A. Kieffer* for respondent.

[792] HYDE, J.—This case, an action for damages for personal injuries, was transferred by the St. Louis Court of Appeals on dissent of one of the Judges. [Panke v. Shannon, 207 S. W. (2d) 854.] Plaintiff had judgment for $7000.00. We refer to the opinion of the Court of Appeals for a full statement of the evidence and contentions of the parties.

Our view is that there was no substantial evidence of negligence and, therefore, it is not necessary to rule on the other questions raised. The basis of plaintiff's claim is that, while plaintiff was removing the shoes from defendant's mule, the tenant on defendant's farm (claimed to have been an employee for the purpose of this operation) was negligent in twisting a twitch too tight on the mule's lips, and that this caused the mule to kick plaintiff. The only evidence of what occurred was plaintiff's own testimony, defendant's tenant Clinton having died before the trial. It showed the following facts. Plaintiff and Clinton went to defendant's barn on a cold day (January 12, 1943) to remove the shoes from two mules. Plaintiff was 53 years old at the time and had been a blacksmith for 25 years. Plaintiff suggested that the mules be brought outside but Clinton said they would stand better inside, so they went inside. The mules were in a stall [793] about 10 x 12 in the southeast corner of the barn. Plaintiff and Clinton entered the stall by a door on the south side.

There was a manger and feedway, which went across the barn north and south. The mules were tied to the manger facing west. Plaintiff placed his equipment, including the twitch, in the manger and Clinton stood at the head of the mules to hold each one while plaintiff removed its shoes. Plaintiff removed three shoes (both front and left rear) from the south mule (the one nearest the door) but he got nervous and got loose from him, when he started to remove the fourth shoe. He decided to let him stand and get over his nervousness so he then took all four shoes off the other mule. Plaintiff then went back to remove the right rear shoe from the first mule. Clinton was holding his head by the halter to try to keep him quiet. Plaintiff picked up the mule's foot, standing with his back to Clinton,

and removed the shoe. He said he never thought of taking the other mule out of the stall. The mule showed nervousness but he didn't jerk loose. He was "set on hair tension." Plaintiff said: "I wanted to let him down and pitched the shoe back toward the manger and kept his foot in the left hand and put my right hand on his hip. I was afraid to put the mule on four feet, he would whirl on me. I thought he was all right and turned to walk between the two mules toward the manger and that was when the mule started cutting up. . . . He jumped and made an awful fuss and I either got kicked or pawed and he got me down in the barn." Plaintiff had taken one step and was between the two mules when he was struck. He did not know which mule kicked or pawed him but the one on the south started the trouble.

Plaintiff said the next thing he realized was that he was up in the manger: "Mr. Clinton (who was pawed by the mule) was massaging his leg and the mule was standing there with the twitch on his nose. . . . It was on there very tight." The mule was "wiggling his nose and trying to get the twitch off. . . . It would wiggle loose." Plaintiff said the twitch is part of the regular equipment of a horseshoer and is used to quiet mules or horses if they get unruly. The purpose of twisting a twitch is "to attract the mule's attention to something else." Plaintiff hadn't directed Clinton to use the twitch, and had not told him not to do so but did not know he was using it.

Plaintiff had known these mules for about eighteen months and had worked on them three or four times previously. He had found them to be gentle and said they did not cut up any more than he "would expect out of any mules when you mess with their feet." Plaintiff had two expert witnesses, experienced in handling mules and horses, who testified concerning the use of a twitch. One of them said the more the twitch is twisted the more painful it is and if it is too tight the animal generally begins to fight back at you. He said it should be "just tight enough to take his mind off what you are trying to do. You can tell by tightening the twitch, if you want to pick his foot up you can tighten it a little tighter until he quits trying to get away." The other testified as follows: "Q. How much pressure should be applied? A. That depends on the individual animal, some take a great deal more pressure than others. Q. If a twitch is applied too tight what effect would that have on the mule? A. That again is an individual proposition, some would resist viciously, while others would just be stopped with it and wouldn't move a muscle and others fight."

We think this evidence fails to show that any such act of Clinton caused the mule to kick plaintiff. It was not even shown that the mule to which the twitch was applied was the one that kicked him. Certainly it is well known that mules kick for many causes or

without any known cause. As suggested in the dissenting opinion, throwing the shoe toward the mule's head could have been the cause, as might also going between the mules; or it might have been due to mulish displeasure with the whole proceeding. Apparently this nervous mule was ready to kick, being "on hair tension" as plaintiff realized before he put his foot down. The very purpose of the twitch which plaintiff brought with him, and which was an essential part of his equipment, was to keep mules from kicking. It [794] had to be applied tight enough to cause pain to have any effect. There is no evidence to show when Clinton applied the twitch or how much pressure he put on it before plaintiff was kicked. Even considering the evidence sufficient to warrant the inferences that it was applied before plaintiff was kicked and that it was very tight thereafter, nevertheless, there is nothing to show when it was twisted so tight. It is just as reasonable to find that it was so tightened, after plaintiff was kicked, to get the mule under control then.

.. Thus the evidence in this case leaves the cause of the mule's actions wholly to speculation and conjecture. "We have here a state of facts where a reasonable mind might conjecture that one thing happened, another that something else happened, and a third might not agree with either. Sound reasoning, however, does not point to the liability of the defendant to the exclusion of other causes. A verdict cannot be sustained by such evidence." [Bates v. Brown Shoe Co., 342 Mo. 411, 116 S. W. (2d) 31; See also Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S. W. (2d) 626 and cases cited l. c. 634.] That is the situation in this case.

██ Furthermore, a person is not negligent unless his conduct falls below that of a reasonable man under like circumstances. [American Law Institute Restatement of Torts, Sec's. 282-283.] Plaintiff's evidence showed that he brought the twitch there for the very purpose of using it on the mule's mouth to quiet him if he became nervous and unruly. Of course, Clinton knew this. As one of plaintiff's expert witnesses said: "Anybody (has) seen a twitch that ever saw a farm." The testimony of these expert witnesses shows that the only way to tell what amount of pressure was necessary for this purpose was to try it out on the mule. How can it be said from this evidence that the amount of pressure Clinton used before the mule kicked was more or less than a reasonable man would have used, under like circumstances, merely from the way the mule acted? "Negligence which imposes liability must result from a faulty or defective foresight. (Not hindsight) . . . On what should have been anticipated, rather than what happened." [McCollum v. Winnwood Amusement Co., 332 Mo. 779, 59 S. W. (2d) 693] A mule's actions cannot be turned on and off like a machine by any certain pressure on a twitch; and we think it imposes an unreasonable standard to hold one re-

sponsible for failure to anticipate a mule's reactions under such circumstances.

The judgment is reversed. All concur.

### On Motion for Rehearing or to Transfer.

HYDE, J.—On motion for rehearing or to transfer to the Court en Banc, plaintiff says that we have misinterpreted his theory of recovery. Plaintiff says this was that "Clinton was negligent in applying the twitch at all to the mule without notice to plaintiff, who had his back turned to him, together with the negligent manipulation of the twitch until it caused pain to such extent that the mule fought back vigorously and injured both plaintiff and Clinton." Even this statement shows that his real complaint is improper use of the twitch and not merely the fact that Clinton used it or did so without notice to plaintiff. In any event, plaintiff had the burden to prove that the use of the twitch caused the mule to kick and plaintiff failed to produce substantial evidence on that issue. In short, plaintiff's evidence does not show whether the use of the twitch caused the mule to kick or to stop kicking.

Therefore, the motion for rehearing or to transfer is overruled. All concur.