William THARP, a Minor, by Winston G. Tharp, His Father and Natural Guardian, Respondent,

v.

Harry C. MONSEES, d/b/a Monsees Standard Service, Appellant.

No. 46165.

Supreme Court of Missouri,

En Banc.

Sept. 14, 1959.

Rehearing Denied Oct. 12, 1959.

 

Albert E. Hausman, A. A. Goodenough and Walther, Barnard & Walther, George W. Cloyd, St. Louis, for appellant.

Bernard A. Barken, St. Louis, for (plaintiff) respondent.

DALTON, Judge.

Action for damages for personal injuries alleged to have been sustained on account of defendant's negligence. Verdict and judgment were for plaintiff for $48,000. Defendant has appealed and here contends (1) that the court erred in submitting the cause to the jury because plaintiff failed to offer any evidence (a) that defendant was negligent, or (b) that defendant's act was the direct and proximate cause of plaintiff's injuries; (2) that plaintiff's Instruction No. 1 is erroneous; and (3) that the verdict is grossly excessive.

We shall state the evidence favorably to the plaintiff and disregard defendant's evidence unless it aids the plaintiff's case. Defendant Monsees, a service station operator selling Standard Oil Company products at the corner of St. Charles Rock Road and Edmundson Road, St. Louis County, on July 23, 1953 sold a small quantity of gasoline to Jerry Teson, a neighbor boy between twelve and thirteen years of age. Plaintiff was subsequently burned by this gasoline. The act of defendant in making this particular sale of gasoline under the circumstances shown by the evidence is the negligence relied upon as the basis for the recovery of the damages claimed.

Jerry Teson resided with his parents at 3353 Edmundson Road. He was twelve years of age and would be thirteen the 3rd of the next October. Apparently he had finished the 8th grade, as he was in high school, 11th grade, at the time of the trial.

He was a boy of normal intelligence for his age.

Jerry's home was "about a half a block or a block" from defendant's service station. On one prior occasion, Jerry had purchased gasoline from this station for his father, "got it in a gallon jug." Jerry visited defendant's station from time to time. He would buy "soda and a candy bar, or fill my tires on my bicycle." He had also been in the station with his father "in the car", and Jerry testified that defendant knew him and his father and knew that he lived in the neighborhood.

On the morning of July 23, 1953, Jerry and Jimmy Calvert (a neighbor, eleven years of age and would be twelve the following January) were together, riding their bicycles around in the neighborhood. Jerry was riding Billy Tharp (age four, a next-door neighbor) and taking turns with Dickie Tharp, Billy's brother. Riding them "up and down the street", but whether they passed defendant's station or whether defendant saw them does not definitely appear. However, defendant had seen children in the neighborhood playing together and knew that the older ones played with the younger ones at times.

Some time in the afternoon of that day, Jerry rode his bicycle into defendant's station. He was alone. He had a clean glass jar with a tin or copper lid. He had a nickel and told defendant he wanted to buy some gasoline. Defendant filled or nearly filled the jar with gasoline and gave him two cents in change. Defendant did not ask him why he wanted the gasoline and Jerry did not tell him why he wanted it. Jerry could not remember whether the jar was wiped off or the lid replaced, but plaintiff's instruction submitted and defendant's evidence showed a sale of gasoline "in a closed glass jar." After the purchase was completed, Jerry got on his bicycle and went to Jimmy Calvert's home, two houses up and across the street from his own home.

Jerry in fact purchased the gasoline with Jimmy Calvert's money. Jimmy had been

painting an orange crate and, after he finished, he wanted some gasoline to clean his brushes, so he had gotten the glass jar from his mother's basement and given Jerry a nickel and sent him for the gasoline. When Jerry returned, Jimmy "cleaned out the paint jars" and "cleaned his brushes and wiped them off." Only part of the gasoline was required for these purposes. Plaintiff's witness referred to the amount of gasoline remaining, as "a small amount", but this was stricken on defendant's motion. We find no other reference to quantity by plaintiff's witnesses, but in examining plaintiff's expert witness, plaintiff's counsel repeatedly assumed that the quantity of gasoline remaining in the then open jar was "approximately a pint."

Other children were playing in the backyard where Jimmy had been painting the orange crate and, after the paint cans and brushes were cleaned, Jerry and Jimmy went over to the side yard by the creek and Jimmy started playing with the remaining gasoline. Unknown to any adults, Jimmy had matches with him and he "lit a fire" to see how the gasoline would burn. First he "lit" a small paper bag and some Kleenex, then he poured gasoline on a rubber ball to see how it would burn. Later, somebody said, "Let's see how it would burn on the water" and as Jimmy "started to dribble it down out of the jar," pouring the gasoline down the side of the bank, "it shot up and caught fire to the whole jar", the fire backed up into the jar, and Jimmy swung around to throw it into the water, but plaintiff was in the way and it spilled over him, and he was badly burned.

At the time Jerry purchased the gasoline in question, he knew it would burn and he had seen it burn before. He had seen a match thrown on gasoline to "see it go up, see it burn the whole thing at once." He knew it was fairly easy to catch fire. He knew that "all you had to do is touch a small flame to gasoline and it would burn rapidly"; and "that people were cautious about using gasoline around an open flame." However, he did not know that, if you dribbled gasoline from an open container onto an open flame, the fire would "backlash" and the flames shoot up to the container and set the source gasoline afire, nor did he make any such use of the gasoline sold by defendant. Jimmy also knew that gasoline would burn, and that people said it was dangerous, but he didn't know how dangerous. He thought it would burn like paper or boards, "Naturally, anybody hears that gasoline will burn." He had "heard about cars catching on fire and blowing up."

Defendant had been in the filling station business for thirty-two years and knew that gasoline was a dangerous commodity when sold to Jerry "or anybody else, as far as that matter goes." He knew that an automobile engine should be turned off to prevent a spark from igniting the gasoline fumes when the gas tank is being filled.

Plaintiff offered evidence to show that gasoline has a very low igniting point; that it is highly inflammable and is dangerous; that gasoline, as a liquid, will not burn but gasoline vapors burn and, when gasoline is vaporized, fire will follow the vapor trails (sometimes as much as several hundred feet) to cause ignition at the source. Heat causes gasoline to vaporize more rapidly. Gasoline in an open container in open air will not explode, but when vaporizing it will burn ultra rapidly. Gasoline, as a liquid, if properly contained and confined, does not present a hazard, but when exposed to air it vaporizes rapidly and presents an extreme and practically uncontrollable hazard. Under certain conditions it is highly explosive and very powerful. The danger in putting gasoline in a glass container is that some force might cause the glass container to be broken and the contents exposed to rapid vaporization and possible ignition.

The issue of negligence was submitted by plaintiff's Instruction No. 1. It submitted a finding that defendant "sold and delivered three cents (3¢) worth of gasoline in a closed glass jar to one Jerry Teson, a mi-

nor child being then between twelve (12) and thirteen (13) years of age * * * that gasoline is a highly inflammable and inherently dangerous substance, and that the same in the hands of the minor child, as aforesaid, would be reasonably likely to cause said child, or others in proximity to him, to be injured as herein set out; and if you further find that defendant * * * knew, or in the exercise of ordinary care should have known, that gasoline is a highly inflammable and inherently dangerous substance and that the same in the hands of a minor child, as aforesaid, would be reasonably likely to cause said child, or others in proximity to him to be injured, as aforesaid, and if you further find that in selling and delivering the gasoline to the minor child, as aforesaid, defendant was negligent * * *." The issue submitted by the instruction was therefore whether defendant knew, or in the exercise of ordinary care should have known, that the sale of the gasoline in question to Jerry, under all of the facts and circumstances shown in evidence, "would be reasonably likely to cause said child, or others in proximity to him to be injured."

At the close of all the evidence defendant had moved for a directed verdict on the ground that the evidence "fails to prove any negligence on the part of defendant"; and that "the evidence fails to show that any act of this defendant was the proximate cause of plaintiff's injuries." The motion was overruled and the cause submitted. Appellant here complains of that ruling.

No statute prohibits the sale of gasoline to a minor child. Section 414.130 RSMo 1949, V.A.M.S., provides that persons retailing gasoline "and other kindred high explosives" in less than carload or tank wagon, or motor truck lots, shall have the containers "painted vermillion red" and otherwise labeled as therein provided, but the statute does not apply to sales of gasoline "where the quantity is one quart or less." There is no contention here that defendant's act was negligent per se.

To make out a submissible negligence case for the jury there must be substantial evidence not only of negligence, but substantial evidence that such negligence directly caused or contributed to directly cause plaintiff's injury. Housden v. E. I. DuPont De Nemours & Co., Mo.Sup., 321 S.W.2d 430, 433; Craddock v. Greenberg Mercantile, Inc., Mo.Sup., 297 S.W.2d 541, 547; Sanders v. Henderson, Mo.Sup., 301 S.W.2d 748, 749. We will therefore first consider whether any negligence on the part of the defendant Monsees can be inferred from a favorable view of the whole evidence.

"Every person has the duty to exercise ordinary care to so conduct himself as not to injure others, and is liable to one who is harmed by a breach of that duty." Hamilton v. Ross, Mo.Sup., 304 S.W.2d 812, 814. Whether a man's acts in a particular case constitutes negligence must be judged by the concomitant circumstances and his environment must be taken into account. Dickson v. Missouri Pac. Ry. Co., 104 Mo. 491, 16 S.W. 381, 384. While negligence consists of a failure to use ordinary care to avoid injury to others, ordinary care is a relative term, and its exercise requires precautions commensurate with the dangers to be reasonably anticipated under the circumstances. Stumpf v. Panhandle Eastern Pipeline Co., 354 Mo. 208, 189 S.W.2d 223, 228. The exercise of ordinary care requires precautions which a reasonably prudent person would have taken in the given circumstances, but if a person had no reasonable ground to anticipate that a particular act would or might result in any injury to anybody, then, of course, the act would not be negligent at all.

The applicable rules are well stated in Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W.2d 52, 55, as follows:

"Negligence depends upon the surrounding circumstances, as well as the particular conduct involved, because an act or omission which would clearly be negligent in

some circumstances might not be negligent in other circumstances or surroundings. Rouchene v. Gamble Const. Co., 338 Mo. 123, 89 S.W.2d 58. * * * It is not negligence to fail to take precautionary measures to prevent injuries resulting from peculiar, unusual and unexpected occurrences which could not have been reasonably anticipated. 65 C.J.S. Negligence § 84, pp. 592–593. It has also been stated that a negligent act may be one which creates a situation which involves an unreasonable risk to another because of the expectable action of a third person. Restatements, Torts, § 302.

"Relating to those dangers to be reasonably anticipated—if there is some probability or likelihood, not a mere possibility, of harm sufficiently serious that ordinary men would take precautions to avoid it, then the failure to do so is negligence. While the likelihood of a future happening is the test of a duty to anticipate, this does not mean the chances in favor of the happening must exceed those against it. The test is not the balance of probabilities, but of the existence of some probability of sufficient moment to induce the reasonable mind to take the precautions which would avoid it. Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W.2d 35; Lloyd v. Alton R. Co., 348 Mo. 1222, 159 S.W.2d 267; Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91."

"Furthermore, a person is not negligent unless his conduct falls below that of a reasonable man under like circumstances. [American Law Institute Restatement of Torts, Sec's. 282–283.]" Panke v. Shannon, 357 Mo. 1195, 212 S.W.2d 792, 794. "Negligence which imposes liability must result from a faulty or defective foresight. (Not hindsight) * * * On what should have been anticipated, rather than what happened." McCollum v. Winnwood Amusement Co., 332 Mo. 779, 59 S.W.2d 693, 697; Panke v. Shannon, supra; Hughes v. St. Louis Nat. League Baseball Club, 359 Mo. 993, 999, 224 S.W.2d 989,

993–994; Dickinson v. Eden Theatre Co., 360 Mo. 941, 231 S.W.2d 609, 612.

■ It is of course unnecessary that the party charged should have anticipated the very injury complained of or anticipated that it would have happened in the exact manner that it did. All that is necessary is that he knew or ought to have known that there was an appreciable chance some injury would result. Fassi v. Schuler, 349 Mo. 160, 159 S.W.2d 774, 776; Funk v. Fulton Iron Works Co., 311 Mo. 77, 277 S.W. 566, 570(8); Lottes v. Pessina, Mo. App., 174 S.W.2d 893, 897.

■ "Negligence is ordinarily a question for the jury. It is always so when the evidence on material points is conflicting, or where, the facts being undisputed, different minds might reasonably draw different conclusions from them." Gratiot v. Missouri Pac. Ry. Co., 116 Mo. 450, 466, 21 S.W. 1094, 1098. A case may not be withdrawn from the jury unless all reasonable men, in the honest exercise of a fair, impartial judgment, would draw the same conclusion from the facts which condition the issue. Parrent v. Mobile & O. R. Co., 334 Mo. 1202, 70 S.W.2d 1068, 1073; Lloyd v. Alton R. Co., 348 Mo. 1222, 159 S.W.2d 267, 272; Fortner v. St. Louis Public Service Co., Mo.Sup., 244 S.W.2d 10, 13.

■ In ruling the issue presented we must give plaintiff the benefit of his evidence and every inference of fact in his favor, which a jury might, with any degree of propriety, have inferred, since a verdict may be directed against a plaintiff only when the facts and inferences to be drawn therefrom, considered in the light of the rule, are so strongly against the plaintiff as to leave no room for reasonable minds to differ. Sibert v. Boger, Mo.Sup., 260 S. W.2d 569, 571; De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 633; Hillhouse v. Thompson, 362 Mo. 700, 243 S.W.2d 531, 536.

In this case there is little dispute as to the facts so we will review the authorities relied upon by respondent. In support of the contention that the motion for a directed verdict was properly ruled, respondent relies upon the rule stated in Section 390, Restatement of the Law of Torts, to the effect that: "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or from facts known to him should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in, or be in the the vicinity of its use, is subject to liability for bodily harm caused thereby to them." Respondent also relies upon an annotation in 20 A.L.R. page 124, to the effect that "at common law the legal principle is established that if one sells a dangerous article or instrumentality such as firearms or explosives to a child whom he knows or ought to know to be, by reason of youth and inexperience, unfit to be trusted with it, and who might innocently and ignorantly play with or use it to his injury, and injury does in fact result, he may be found guilty of negligence and consequently liable in damages."

We are of the opinion that the legal principles relied upon are not applicable to the facts of this case; and that each of the cases relied upon by respondent to support the plaintiff's verdict may be easily distinguished upon their own peculiar facts from the facts in this case.

In Bosserman v. Smith, 205 Mo.App. 657, 226 S.W. 608, 609, an eight and one-half year old boy and a young girl intending to purchase some fire works, known as "red fires", were negligently sold "a 'mine,'" which, when fired, explodes and throws a stream of fire high into the air, an exceedingly dangerous thing for children to have, well known to be such, and which the clerk and defendant knew, or should have known, was very dangerous. No warning was given to the children of its dangerous char-

acter, however, and they were allowed to take the 'mine' away from the store, thinking and believing that it was a 'red fire,' as the clerk had told them." When lighted the mine exploded and the boy was injured. The court held: "There is no question but that the 'mine' was an exceedingly dangerous article to be placed in the hands of a child of tender years, and it is well established that the sale of such an article to such a child is an actionable wrong for which the seller will be held liable in case damage results to the child as a proximate consequence thereof."

In Lottes v. Pessina, supra [174 S.W.2d 896], plaintiff, a twelve year old boy was injured when he and his companion removed powder from paper tubes found in the city's park after a fireworks display, and placed it in a brass tube and then ignited it. The paper tubes had been left (apparently abandoned) at a place where children were accustomed to play. The court held that the evidence was sufficient to show both negligence and proximate cause, since the defendant could have reasonably anticipated that the paper tubes would be appropriated by the children and used for the very purpose for which such powder was intended, that is, "to be ignited and produce red or green flames in a flash. * * * In other words, the defendant should have anticipated that an explosive powder found by children would be exploded by them in some manner, and whether placed in a brass tube or some other container, or simply ignited in the open, it was dangerous substance and liable to injure them."

In the case of Kansas City ex rel. Barlow v. Robinson, 322 Mo. 1050, 17 S.W.2d 977, 981, a six year old child was injured by a dynamite cap affixed to a wire, which had been stored with others where they could be found by children. The court stated the rule as follows: "It is the general rule of law that to leave exposed and unguarded, on accessible premises, an explosive which is found by trespassing children is negligence. * * * 'One whose business requires the use of explosives must use such

care and caution in handling or guarding them as prudent and careful persons whose business requires the use of such explosives ordinarily exercise.' * * * The original negligence of defendants in leaving the caps exposed and unguarded, as was done where children of immature understanding and judgment might find them, set in motion a chain of causation, the result of which defendants could readily have anticipated. The injury to plaintiff could not have resulted without the defendants' original negligence in exposing the caps, and the intervening act of Wilson was, at most, a concurring cause, which failed to break the causal connection of defendants' original negligence with the injury."

In the case of Boyer v. Guidicy Marble, Terrazzo & Tile Co., Mo.Sup., 246 S.W.2d 742, 744, plaintiff a boy seventeen years of age, and a companion, thirteen years of age, found apparently abandoned and "thrown away" dynamite caps at a place frequented by children. Neither plaintiff nor his companion knew what they had found or that the dynamite caps were dangerous. Plaintiff took the caps to his home and two days later, during which interval plaintiff's knowledge as to the identity or character of the caps had not changed, stuck a nail into one of them, causing it to explode and seriously injure him. Defendant having left the dynamite caps where they would so be found, was held liable for the resulting injury.

In the case of Alligator Co. v. Dutton, 8 Cir., 109 F.2d 900, 906, a nine year old was injured (burned) when an inflammable waste product (which his companion had procured in a small can from a bucket standing near defendant's incinerator adjacent to a vacant lot frequented by children) came in contact with an open fire the children had built. In holding that a case of negligence was made for the jury the court said: "The substance here involved was not dangerous in the absence of fire to supply the detonating force. But the evidence established that the boys frequently had fires burning where the company employees could see them, and the jury would be justified in concluding that company employees did see the fires or in concluding that failure to see the fires was gross negligence under the circumstances. The presence of the detonating force was established, and it was a jury question whether the substance was a dangerous substance which required careful keeping. The substance looked like an ordinary oil and its appearance was deceptive in that it gave no warning of its dangerous characteristics. * * * In the hands of children not acquainted with the properties of the substance or its proper and safe use, the substance was particularly dangerous."

In the case of Yachuk v. Oliver Blais Co., (1949) A.C. 386, 2 All Eng. 150, 20 A.L.R.2d 111, 117, two boys nine and seven years of age respectively purchased five cents worth of gasoline (approximately one pint) from a service station attendant and had it placed in a quart lard can with a closely fitting, removable lid, the elder boy telling the attendant it was needed for his mother's car, when in fact the boys wanted the gasoline to play a game with torches made by soaking bulrushes in gasoline and lighting them. When using is for that purpose, the gasoline in the pail caught fire and the elder child was injured. It was held: "The negligence of the respondent consisted in putting into the hands of a small boy a dangerous substance with which a reasonable man, taking thought, would have foreseen that the child was likely to do himself an injury. The fact that the boy told an untruth in order to persuade Black to give him the gasoline, a fact on which the respondent's counsel much relied, cannot avail the respondent in view of the learned judge's finding that Black's doubts as to the propriety of the sale were justified. To put a highly inflammable substance into the hands of a small boy is to subject him to temptation and the risk of injury * * * The child's deceit can afford no excuse to the supplier when it is found that the story told was such as to arouse, rather than allay, suspicion in the mind of a reasonable man."

■ Considering the facts in the case before us, defendant was in the business of selling gasoline at retail and had been so engaged for many years. The sale was made in the regular course of business. We shall first consider the commodity sold, "gasoline." While gasoline is a high explosive, inflammable and inherently dangerous substance, nevertheless it is a very common and almost universally used commodity and its properties are generally well known to young and old alike. No doubt at this time millions of gallons of gasoline are sold daily in this country to the millions of persons who drive and operate the millions of automobiles. Not all gasoline sold is pumped into motor vehicle tanks, but gasoline is sold in many containers for many different uses. It is common knowledge that it is used to operate many types of farm machinery and scooters, motorcycles, outboard motors, lawn mowers, pumps, et cetera; that it is poured out of cans and containers into the gas tanks of the various machines for the purpose of providing power; and that young and old alike handle it for such purposes. "The storage of gasoline in reasonable quantities in buried tanks at a filling station is not, at this day (1931), regarded as an unnatural gathering of a dangerous agency." Greene v. Spinning, Mo.App., 48 S.W.2d 51, 61. "The presence of gasoline in a place where it might reasonably be expected would not be a hidden peril." Anderson v. Cinnamon, 365 Mo. 304, 282 S.W.2d 445, 448, 55 A.L.R.2d 516. It was not negligent to fail to warn fireman of the presence of gasoline in a garage, since "gasoline is known by everybody to be stored about a garage." Gannon v. Royal Properties, 285 App.Div. 131, 136 N.Y.S.2d 129, 131. The wide sale and use of gasoline and the familiarity of the public generally with its use and properties puts it in a very different class froim nitroglycerin, dynamite, dynamite caps, gunpowder, giant firecrackers and explosives of that type which are used by few people.

■ We next consider the person to whom the commodity was sold. Jerry was a neighbor boy, well known to defendant. He was almost twelve years and ten months of age and a normal boy for his age. He had purchased gasoline in a container before and had been in the station "in the car" with his father. He was generally familiar with the properties of gasoline, to wit: it would burn, easily take fire and should be kept away from an open flame. In this day and time it would be hard to conceive of a normal twelve year old boy (ready to enter high school) and living in a town or in the country or particularly in the vicinity of a great city with its many gasoline filling stations and its thousands of gasoline operated motors, gasoline powered machines, outboard motors, lawn mowers and motor vehicles, that did not know the general properties of gasoline and the ease with which it takes fire or can be ignited. Plaintiff's evidence supports these well known facts, as was shown by the testimony of witness Jerry, who bought the gasoline, and Jimmy to whom it was delivered.

Jerry purchased the gasoline for a proper purpose, for use as a solvent, to be used by Jimmy for cleaning the paint cans and brushes when his painting was finished. We think it immaterial that defendant did not ask the purpose of the purchase or that Jerry did not tell him, because there was nothing to put defendant on notice that any improper use of the gasoline was contemplated.

The gasoline in question was delivered in a closed container, a small glass jar with a lid on it. No point is made of the fact that the container was made of glass. It did not break. Plaintiff's own evidence showed that gasoline confined in a jar with the lid firmly affixed did not present a hazard "as far as vaporizing the liquid is concerned"; that "if gasoline is properly contained it doesn't present a hazard"; and that danger depends on the circumstances so that it should be properly handled and protected. Further, the amount of gasoline purchased was three cents worth, less than a pint, and it was partly used for a proper purpose, the purpose for which it was purchased. The

remaining gasoline did not explode—but the residue was burning in the open container when Jimmy attempted to throw it away and it spilled upon plaintiff.

In the case of Mondt v. Ehrenwerth, 251 Ill.App. 226, 233, the defendant had sold ten cents worth of benzine, in an empty gallon varnish can, to a boy thirteen or fourteen years of age who knew the character and qualities of the article and had been sent to the dealer this time and before by his mother. The sale was not in violation of a statute making it unlawful to sell benzine "in such manner or under such circumstances as will jeopardize life or property"; nor was the dealer liable for negligence in making the sale, although plaintiff's decedent, a five year old child, died as a result of burns sustained when the benzine exploded as the purchaser, who was carrying it home, was showing a third child how the stuff would burn. The court said that on the evidence a jury could not reasonably find that benzine in the small quantity so sold was "imminently dangerous." The court also said: "Assuming negligence, the injury here was not the natural and probable result of the assumed negligent act or omission, but on the contrary was proximately caused by a subsequent, independent act of another. At most, it can only be said that the sale of the benzine created a condition which made the injury to the intestate possible. This is not sufficient to establish liability."

We find nothing in this record to support a finding that defendant had any reasonable cause to anticipate that Jerry Teson would make any dangerous or improper use of the small quantity of gasoline sold, or that he might deliver it, as he did, to an associate for a proper purpose. We find no evidence to support a finding that defendant knew or ought to have known that in selling this small quantity of gasoline to a normal neighbor boy of the age shown, he was placing a "highly inflammable and inherently dangerous" substance *into the hands of a child of insufficient maturity and information to be able to safely handle it or that he knew or should have known that it "would be reasonably likely to cause said child or others in proximity to him, to be injured."* No issue of negligence was made for the jury.

Further, we do not find the amount of gasoline sold in this case to be so "imminently dangerous" that the rule as to proximate cause, as applied in the case of Kansas City ex rel. Barlow v. Robinson, supra, applies in this case, to wit to the effect that in such cases as the Barlow case intervening acts of a third party are to be considered a concurring cause, which fails to break the causal connection of defendant's original negligence with plaintiff's injury.

Even if we assume that defendant was negligent, yet under the facts of this case it clearly appears that the injury to plaintiff was not the natural and probable result of the sale. The injury was directly and proximately caused by the subsequent intervening act of Jimmy Calvert in setting fire to the unused portion of the gasoline and then accidently spilling the burning liquid over plaintiff. The non-negligent sale only created the condition which made the injury possible, but it was not the legal cause of such injury. The facts here do not call for the application of the rule applied in the Barlow case nor the rule relied upon by respondent and stated in the case of Louisville & N. R. Co. v. Beatrice Foods Co., Mo.App., 250 S.W.2d 825, 828, to the effect that "if the initial act or omission is one from which harm is the natural, probable and foreseeable consequence then he who performs the original act or makes the original omission is liable, notwithstanding the fact that other causes, conditions or agencies intervene between his negligence and the ultimate result."

In the case of Greiving v. La Plante, 156 Kan. 196, 131 P.2d 898, two boys, one nine and one ten years old, had a fire in a little can and had used coal oil to make it burn better. The nine year old boy went to the filling station and told the attendant his

daddy wanted some gasoline to clean a hat and bought two cents worth. Later the ten year old boy poured the gasoline on the fire and was burned. The court said: "Our question is whether the injury to the plaintiff, under the facts and circumstances shown by the evidence, was a result which an ordinarily prudent person would reasonably think might happen if he sold the gasoline to the boy to whom he did sell it * *." 131 P.2d 898, 900. The court held that the injury, under the circumstances of remoteness and intervening events, was not within the probabilities, the natural sequence, which the seller was chargeable with foreseeing.

In Clark v. Ticehurst, 176 Kan. 544, 271 P.2d 295, a petition alleging that an eleven year old boy went to a gasoline filling station with an open tin can; that an employee in charge of the station sold him a dimes worth of gasoline, which was poured into a can; that at the time of the purchase the boy advised the employee that he was going to help burn the gasoline at a nearby house; that the boy poured a portion of the gasoline on a toy airplane for the purpose of burning the airplane; that flames from the burning airplane set fire to the remainder of the gasoline in the tin can; and that a child playing nearby was burned, was held to sufficiently allege a cause of action against the operator of the station for the burns sustained by the child. In that case appellant made no contention that the act of the employee in selling the gasoline was not negligent, but contended that the injuries sustained by plaintiff were not reasonably foreseeable by defendant's employee and that any act of his was so remote from the injury as not to constitute the proximate cause of the injury. The court said the opinion in the Greiving case was not decisive, and stated: "The amount of gasoline purchased in the instant case was not a mere two cents worth, but ten cents worth, and this court is not unmindful that that sum purchased approximately three pints of gasoline. Further the gasoline was purchased with direct knowledge on the part of the seller that the purchaser was going to help burn the gasoline at a nearby house. Under the allegations as to the use to be made of the gasoline, it is not subject to debate but that the seller was guilty of negligence in making the sale to the eleven year old boy. * * * Nor are we convinced that under the allegations of the petition the fact of the burning of the gasoline after it had been taken from appellant's place of business was an intervening act breaking the stream of causation for the seller had specific notice that that was what was to be done with the gasoline." 271 P.2d 295, 297.

"Whether or not negligence *can* be inferred from a given state of facts is a question of law for the court. * * *" Yerger v. Smith, 338 Mo. 140, 89 S.W.2d 66, 74. It is a judicial function to determine whether the evidence is substantial, as a matter of law, and warrants inferences sufficient for the submission of the case to the jury. When evidence is such that, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by nonsuit, directed verdict or otherwise in accordance with applicable practice without submission to jury, or by judgment notwithstanding the verdict. Nance v. Atchison, T. & S. F. Ry. Co., 360 Mo. 980, 232 S.W.2d 547, 554. That means that where facts in evidence and legitimate inferences therefrom are so strongly against a verdict for plaintiff as to leave no room for reasonable minds to differ, defendant is entitled to a directed verdict. Stone v. Farmington Aviation Corp., 363 Mo. 803, 253 S.W.2d 810, 813.

In view of the conclusions we have reached, as above stated, the judgment must be reversed, and it is unnecessary to consider other assignments of error by appellant.

The judgment is reversed.

All concur.